EL BANCO DE SAN JUAN, DEMANDANTE Y APELANTE, *v.* ESTEVES, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Primer Distrito, en procedimiento de *injunction.*

No. 2588.—Resuelto en junio 12, 1923.

TERRENOS INSULARES—USURPACIÓN DE TERRENOS INSULARES.—La ley sobre *injunction* para recobrar la posesión no impone a los funcionarios insulares encargados de los terrenos pertenecientes a El Pueblo de Puerto Rico ninguna obligación especial a que no estén sujetos los demás dueños o encargados de bienes inmuebles, ni fué tampoco el propósito de dicha ley el fomentar o ayudar la usurpación agresiva y expropiación de ninguna parte del dominio público por individuos particulares o corporaciones que están en posesión de terrenos colindantes, por el simple procedimiento de anexión, ya sea en forma subrepticia y gradual o abierta y a intervalos.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. M. Tous Soto* y *V. M. Fernández.*

Abogados del apelado: *Hon. Attorney General* y *Sres. L. Samalea* y *C. Llauger Díaz.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

La corte inferior, después de una vista de una orden requiriendo al demandado para mostrar causa por qué no debía expedirse un mandamiento de injunction y sin resolver sobre los hechos revelados por la prueba que fué presen-

tada, declaró con lugar la excepción previa formulada a la solicitud y dictó resolución desestimando la demanda, por carecer la corte de jurisdicción, fundada en la teoría de que la acción era por su naturaleza contra El Pueblo de Puerto Rico. El único error que ha sido alegado por el apelante, afecta a la corrección de esta resolución.

Alega la demanda entre otros particulares que el peticionario es dueño de una finca de 290 metros de ancho por 388 de largo, inscrita en el Registro de la Propiedad y subdividida en solares; que el demandado, el Comisionado del Interior, por medio de empleados de su oficina viene molestando a la demandante en el disfrute de este inmueble, ha penetrado en el mismo varias veces y tratado de hacerlo en otras ocasiones intentando derribar las indicaciones materiales de los linderos de la finca y las accesiones que en ella existen, tratando mediante su autoridad y coercitivamente de limitar la posesión y disfrute de la demandante a una menor extensión superficial de la que corresponde al inmueble, variando al efecto su lindero Sur totalmente y los del Este y Oeste en parte; también alega que no existe título de propiedad ni de posesión a favor de alguien, opuesto al del peticionario sobre el inmueble descrito, o alguna parte del mismo.

El demandado se opuso a la expedición del *injunction*. entre otras razones, por las siguientes:

"Porque en la demanda se alega que la finca pertenece en su totalidad a la demandante y del título a que se hace referencia en el hecho tercero de la demanda, y que se ha archivado conjuntamente con la solicitud, aparece que la demandante no es dueña de la totalidad de la finca sino aquella parte que reste después de descontarse las diversas segregaciones de que ha sido objeto dicha finca, las cuales segregaciones aparecen inscritas en el registro de la propiedad, sin que se alegue o describa cuál es la participación que en la finca referida adquirió el Banco de San Juan; y sin que se alegue que los actos imputados al demandado hayan sido realizados en la porción que pertenezca al Banco de San Juan, ni en ninguna

otra porción bajo el cuidado, administración o control del Banco de San Juan.

"(*b*) Que El Pueblo de Puerto Rico es dueño en pleno dominio y posesión de los manglares que, ocupando una superficie de 270.07 cuerdas, forman la parcela número cinco, plano de manglares del Pueblo de Puerto Rico; Bahía de San Juan, colindantes al Norte con terrenos ·de la Sucn. Cerra, Sucn. Ramos, Sucn. Figueroa, Pueblo de Puerto Rico, Porto Rico Brewing Co., Vannina, Avelino Vicente, Bernabé Sabalier, C. Andrade, Rafael Fabián, Rosa Echevestre, Pedro Bolívar, Wenceslao Bosch, Sucn. Rosales; por el Sur, con el Canal del Caño de Martín Peña; por el Este con la zona de la vía del trolley; y por el Oeste con la carretera de Santurce a Bayamón.

"Que desde hace tiempo y actualmente ha existido y existe entre demandante y El Pueblo de Puerto Rico una controversia o disputa en .cuanto al dominio de cierta parcela de terreno, originalmente manglares, la cual se encuentra comprendida dentro de la finca de El Pueblo de Puerto Rico anteriormente descrita; y que la parcela con respecto a la cual existe la controversia de referencia colinda con Bernabé Sabalier en la parte Norte de los referidos manglares desde las puntas 345 al 351, inclusives, en 425 metros al Este desde el punto 351 N. al 410 S. y al Oeste en 330 metros desde el punto 345 N. al 413 S.

"Y alega .el demandado, que en los citados manglares el demandado en su carácter de Comisionado del Interior de Puerto Rico, ha realizado siempre, antes y después del 22 de Mayo del 1920, y actualmente realiza, todos aquellos actos que corresponden o son inherentes al ejercicio del derecho de propiedad y posesión de dicha finca; y que si los actos que el demandante intenta imputar al demandado fueron realizados es un hecho que tales actos se realizaron dentro de los referidos manglares propiedad de El Pueblo de Puerto Rico cuya custodia, administración y guardia están confia· das al demandado en su carácter oficial del Comisionado del Interior de esta Isla."

El abogado del peticionario aceptó que un plano que fué ofrecido por el demandado había sido debidamente preparado después de hacerse una mensura por los ingenieros Castro y González actuando dentro del ejercicio de las funciones oficiales y que el mismo "representa la situación res-

pectiva de los manglares de la bahía de San Juan, y entre los cuales está el del señor Sabalier,'' que es el causante.

Ni este plano ni la escritura que se alega fué presentada en la corte inferior en unión a la demanda se les ha hecho formar parte de la transcripción, aunque se hace referencia al plano, lo que indica el propósito de haberlo enviado a esta corte como documento original.

Unas seis semanas o más antes de radicarse la solicitud de *injunction*, el peticionario dirigió una comunicación al Jefe de la División de Terrenos Públicos y Archivos del Departamento del Interior acompañando copia de la escritura en la que funda su derecho, y un plano.

Esta comunicación expresa que habiendo tenido conocimiento el banco de que el Departamento iba a proceder al deslinde de los manglares, se apresura a presentar sus alegaciones ''de modo que puedan tenerse en cuenta al procederse al deslinde.'' Sigue entonces una descripción de ''la parcela Sur que colinda con los manglares.'' Esta descripción comprende los manglares pertenecientes al Pueblo de Puerto Rico, no sólo como la colindancia del Sur, sino también por formar en parte las colindancias del Este y Oeste La superficie resulta ser de 13.45 cuerdas, de la cual dice el banco ''sólo está en posesión el señor Sabalier de 3.83 cuerdas.'' Viene entonces lo siguiente:

'' 'Establecidos estos precedentes vamos a hacer nuestra petición a ese Departamento, en la forma que expresamos, en los incisos siguientes: Primero: Deseamos que ese Departamento nos deslinde la parte Sur colindante con los manglares, teniendo en cuenta nuestro título de propiedad debidamente inscrito y el plano levantado por el Ingeniero Sr. Morales, padre; alegamos que hemos gastado alrededor de mil quinientos dólares en desecar parte de esa porción que consideramos nuestra: que hemos de seguir desecando el poco resto que queda, hasta llegar al límite nuestro: que desde hace tiempo estamos pagando contribución por cinco cuerdas de terreno, cuando sólo son tres cuerdas 83 centímetros: que en la actualidad nos han aumentado el valor de las cinco cuerdas de

$4,900 a $20,900 como Ud. podrá ver por los recibos de contribución y por la notificación del Tesorero de Puerto Rico. Segundo: Alegamos que al dividir esos terrenos en solares, para satisfacer la ansiosa demanda del elemento trabajador, hemos tenido que destinar para calles alrededor de 4,500 metros, lo que se comprobará tan pronto el Sr. Armando Morales, Jr. nos termine la mensura y levante el plano de toda esa parcela Sur. Tercero: Y por último, solicitamos y pedimos a ese Departamento nos conceda el derecho que tiene todo colindante a ir desecando y utilizando la parte del Pueblo de Puerto Rico que colinda con él; preferencia por la ley y por la costumbre. Pero, no obstante, estamos dispuestos a sujetarnos a las reglas y reglamentos que el Departamento tenga adoptados para hacer esa concesión. Le suplicamos también nos notifique el día que se vaya a proceder al deslinde. Sin otro particular por ahora, quedamos de Vd. muy sinceramente.—Banco de San Juan.—Lcdo. Abraham Peña.—Presidente.''

Pocos días después, en una comunicación dirigida al Comisionado del Interior, se queja el banco de que un agrimensor ha empezado el trabajo sin previa notificación al banco, sin haberse informado de las reclamaciones del banco y ni prestado debida consideración a ella, y concluye pidiendo que sea paralizada la obra hasta que el Comisionado pueda resolver el caso.

Dos semanas después el abogado del banco informa al sub-comisionado, como resultado de una investigación hecha por el abogado, que ciertos arrendatarios del banco, sin el conocimiento del administrador de la propiedad habían estado ''rellenando'' sus solares con arena, y recibido órdenes perentorias de paralizar este trabajo. El abogado informa también sobre el progreso obtenido en el examen de las documentaciones, con el fin de que prontamente se arregle la cuestión que entonces estaba pendiente, se refiere a una conversación anterior relativa al consentimiento del Departamento respecto a reparaciones en ciertos techos, y da los nombres de las personas interesadas a fin de que se libre una orden autorizando tales reparaciones.

En una carta de la misma fecha el sub-comisionado acusa recibo de la anterior y acompaña una orden autorizando al Inspector de Edificios Públicos a que permita hacer la reparación de los techos en cuestión, pero excluyendo específicamente cualquier extensión o ampliación en los edificios envueltos.

Dos días antes de la fecha de las dos comunicaciones que acaban de citarse el sub-comisionado había dado al Inspector de Edificios Públicos la siguiente información e instrucciones:

"Señor:—El Sr. Lao Flores, encargado por el Banco de San Juan del cuidado de su finca en Santurce, viene a quejarse a esta oficina de que Ud. destruyó el sábado parte de un colgadizo de la casa de Etanislao Delgado y de otra pobre señora, que no hacían ninguna nueva construcción. El Departamento ha convenido con los representantes del Banco de San Juan en no hacer acto ninguno de autoridad dentro de sus terrenos, mientras que dicho Banco por su parte tampoco hará nuevas construcciones, ni urbanización, ni colocación de cercas dentro de esos terrenos que el Departamento asegura ser propiedad del Pueblo de Puerto Rico. Por lo tanto, si lo arriba expresado es cierto, como lo afirma el Sr. Flores, está Ud. cometiendo una incorrección. Sírvase en lo sucesivo limitarse a hacer una inspección diaria de estos terrenos y a dar cuenta inmediata a este Departamento de cualquiera obra nueva que se haga.— Atentamente, (firmado) Jesús Benítez, Sub-Comisionado. Sr. Rogelio Jiménez, Sub-Inspector de Edificios Públicos, San Juan."

Toda vez que no parece haberse levantado cuestión alguna respecto al título del Pueblo de Puerto Rico a los manglares, no necesitamos discutir las proclamas presentadas como prueba por el demandado.

Félix Alamo, testigo del demandante, declaró que los terrenos ahora reclamados por el banco lindan por el Sur con el caño de Martín Peña, que el testigo había vivido allí como arrendatario, pagando una renta desde el año 1909, que los terrenos están atravesados por una línea eléctrica a un lado de la cual hay pasto y en el otro, mangle; que el pasto ha

estado allí por algunos años, no recordando el testigo por cuántos.

La declaración de otro testigo, José Ortiz, es más o menos en el mismo sentido.

El tercer testigo, Lao Flores, había estado encargado de la propiedad por espacio de un año a la fecha de la vista. Dice que "del conductor eléctrico para arriba está todo fabricado," el terreno está cubierto por casas quedando quizás uno o dos solares vacantes; que también hay casas abajo del conductor eléctrico; que poco tiempo antes de la fecha de la correspondencia a que se ha hecho referencia Rogelio Jiménez con dos presos, un guardia de penales y un policía insular se presentaron en el sitio y empezaron a derribar casas desocupadas; que los terraplenes que están abajo del conductor eléctrico y casas tanto arriba como abajo de tal conductor fueron destruídas; que luego el Sub-Comisionado concedió permiso a aquellas personas cuyas casas no habían sido terminadas autorizándoles a terminar el trabajo.

Para los fines de esta opinión puede admitirse que los hechos expresados en la solicitud determinan una causa de acción y que el procedimiento no es, como ha declarado la corte inferior, en substancia una acción contra el Pueblo de Puerto Rico.

Pero los hechos alegados en la solicitud no quedaron probados en el juicio. La alegación relativa a no existir reclamaciones pendientes o conflicto en cuanto al título no sólo no está sostenida por ninguna prueba, sino que en realidad carece enteramente de fundamento. Los actos de Rogelio Jiménez fueron rechazados sin vacilación o demora por el Departamento y prontamente fueron tomadas las medidas necesarias para evitar su repetición en el futuro. También se concedió permiso para continuar el trabajo de casas no terminadas cuya paralización había sido ordenada por Jiménez, y no existe indicación alguna por parte del

demandado de estar dispuesto a intervenir en ninguna forma
con tales derechos posesorios, dudosos y limitados, como el
que pueda decirse que ha adquirido el banco con relación a
las pequeñas fracciones de terreno, o de terrenos y agua
según sea el caso, actualmente ocupados por las "casas"
de sus supuestos arrendatarios.   Ni siquiera consta que con
anterioridad a la expedición de la orden para mostrar causa
los actos que ahora son objeto de queja fueran jamás some
tidos directamente a la consideración del Jefe del Depar-
tamento.

La ley que prescribe la forma en que ha de recobrarse la
posesión de la propiedad inmueble mediante *injunction* y so-
bre la protección de la posesión material contra la pertur-
bación recurriendo a métodos violentos o clandestinos, no
impone a los funcionarios insulares encargados por la ley
de cuidar terrenos pertenecientes al Pueblo de Puerto Rico,
ningunas obligaciones nuevas o peculiares que no sean igual-
mente obligatorias para otros dueños o encargados de pro-
piedad inmueble, ni fué tampoco el propósito de dicha ley el
fomentar o ayudar la usurpación agresiva y expropiación de
ninguna parte del Dominio Público por individuos particu-
lares o corporaciones que están en posesión de terrenos co-
lindantes, por el simple procedimiento de anexión ya sea en
forma subrepticia y gradual o abierta y a intervalos.   Y
mucho menos reconoce la ley de 1908 que autoriza el remedio
ordinario en equidad, semejante doctrina de la soberanía
individual de usurpación.

En el caso de *García et al.* v. *Rodríguez,* 27 D. P. R. 305,
algo se dijo con respecto hasta qué punto consideraremos
cuestiones como ésta.

Apreciadas todas las circumstancias estamos persua-
didos de que los fines de la justicia sustancial fueron cum-
plidos en la corte inferior, debiendo por tanto confirmarse
la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.