Pascasio Oxios y Ortiz, recurrente, *v.* El Registrador de la Propiedad de Ponce, recurrido; José Acosta y Valenciano, recurrente, *v.* El Registrador de la Propiedad de Ponce, recurrido.

Nos. 726 y 725.—*Sometidos:* Junio 23, 1928. *Resueltos:* Abril 8, 1929.

*Herminia y Leopoldo Tormes,* abogados de los recurrentes; el registrador recurrido no compareció.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

José Acosta y Valenciano, y Pascasio Oxios y Ortiz

constituyeron una sociedad regular colectiva el 12 de marzo de 1924, en la ciudad de Ponce. Ninguna otra persona formaba parte de dicha sociedad. Cada una de las personas citadas era socio gestor de la firma, y no había ningún otro socio de clase alguna.

El 28 de febrero de 1928, a nombre de la sociedad, Pascasio Oxios y Ortiz, como gestor, traspasó al otro socio, José Acosta y Valenciano, algunos bienes inmuebles pertenecientes a la citada razón social. El mismo día dicho José Acosta y Valenciano, como socio gestor, traspasó a su socio Pascasio Oxios y Ortiz otros inmuebles pertenecientes a dicha entidad. Fué una operación simétrica y recíproca, en virtud de la cual se trató de traspasar, o realmente se traspasaron ciertos inmuebles pertenecientes a la sociedad, de la sociedad a estas dos personas, cada una de las cuales era socio gestor, y no estando la sociedad constituida por ninguna otra persona.

El registrador se negó a inscribir en cada caso la escritura de enajenación, por nota cuya parte substancial en el caso No. 725 lee así:

"Denegada la inscripción del precedente documento por aparecer que el comprador es uno de los socios gestores de la vendedora Mercantil Oxios y Acosta, y según prescribe el art. 1597 del Código Civil, apartado 'Primero,' que todos los socios se consideran apoderados, y el art. 1362 del citado Código Civil, en su apartado 'Segundo' prohibe a los mandatarios adquirir bienes de cuya administración o enajenación estuvieren encargados, resultando en este caso que el comprador adquiere por compra dos fincas y otra más, respecto a la cual no se solicitó inscripción perteneciente a la vendedora Oxíos y Acosta, de cuya mercantil es gestor también el comprador señor Acosta, tomándose en su lugar anotación por 120 días, donde se indica en las notas puestas al margen de cada una de las fincas 'Uno' y 'Dos' del documento. No tienen cargas."

El artículo 1362 del Código Civil dispone:

"No podrán adquirir por compra, aunque sea en subasta pública o judicial, por sí ni por persona alguna intermedia:

"1. El tutor, los bienes de la persona o personas que estén bajo su tutela.

"2. Los mandatarios, los bienes de cuya administración o enajenación estuviesen encargados.

"3. Los albaceas, los bienes confiados a su cargo.

"4. Los empleados públicos, los bienes del Pueblo de Puerto Rico, de los municipios, de los pueblos y de los establecimientos también públicos, de cuya administración estuviesen encargados.

"5. Los jueces, individuos del ministerio fiscal, secretarios de tribunales y juzgados y oficiales de justicia, los bienes y derechos que estuviesen en litigio ante el tribunal, en cuya jurisdicción o territorio ejercieran sus respectivas funciones, extendiéndose esta prohibición al acto de adquirir por cesión.

"Se exceptuará de esta regla el caso en que se trate de acciones hereditarias entre coherederos, o de cesión en pago de créditos, o de garantía de los bienes que posean.

"La prohibición contenida en este número 5 comprenderá a los abogados respecto a los bienes y derechos que fueren objeto de un litigio en que intervengan por su profesión y oficio."

Aceptaremos por el momento, de conformidad con el registrador y los recurrentes, que el socio gestor de una sociedad es o puede ser uno de los agentes que caen dentro de la sanción del artículo 1362. En lo que respecta a la administración de la sociedad, en verdad está dotado de todas las facultades inherentes en un apoderado.

El recurrente en cada caso, sin embargo, insiste en que las únicas personas interesadas lo son los dos socios, quienes comparecieron en la escritura asistidos de sus respectivas esposas; que lo que trataban de hacer era reducir el capital de la sociedad: que cada uno de ellos estaría impedido de negar la validez de la enajenación, y que ninguno de ellos podía solicitar su nulidad; que interpretar dicho artículo en la forma en que lo hace el registrador haría que el artículo 1362 fuese inconstitucional, porque ello conduciría a resultados absurdos y cita el caso de *Church of the Holy Trinity* v. *United States,* 143 U. S. 457. Los recurrentes citan varios casos para demostrar que cuando una interpretación conduciría a resultados absurdos, debe aceptarse cualquiera inter-

pretación razonable que conserve, más bien que destruya, la ley. Citando varios comentarios de Manresa, los recurrentes dicen o admiten en efecto, que si uno de los socios se opusiera, una enajenación de esta clase no podría hacerse, pero que aquí las partes interesadas han prestado su consentimiento. Todo este razonamiento tiene peso.

Los recurrentes dicen más particularmente que en cada caso la sociedad es la que vende, y que, por tanto, la transacción no debe ser considerada como una en que un agente adquiere los bienes de su mandante. Creemos que los recurrentes están en lo cierto. En el caso de *Ledesma* v. *Agrait,* 19 D.P.R. 566, resolvimos que algunas de las ventas efectuadas en contravención con el artículo 1362 eran meramente anulables y que luego el mandante, con conocimiento de todos los elementos esenciales del contrato, podía ratificar el acto de su agente.

Para conveniencia en la discusión, consideraremos cronológicamente algunos de los casos de esta corte en que se han discutido principios similares.

En el caso de *Alvarez* v. *Riera,* 20 D.P.R. 324, José Dimas Riera, como apoderado de la sociedad, vendió todos los derechos y acciones. El pleito tuvo por objeto anular el documento y la corte inferior dijo que la acción había prescrito en vista del término de prescripción de cuatro años fijado por el artículo 1268 del Código Civil, y esta corte resolvió citando el caso de *Ledesma* v. *Agrait,* supra, que la prohibición de la ley hacía que el contrato fuera meramente revocable y que por tanto podía ser ratificado. Resolvimos, además, citando de la Corte Suprema de España, que era necesario instituir una acción de nulidad.

*Cortijo* v. *Registrador de la Propiedad,* 21 D.P.R. 490, fué un caso en que resolvimos que una cancelación de hipoteca otorgada por el marido era absolutamente válida en cuanto a él y a sus herederos, pero que podía ser ratificada por la esposa. Después de citar los principios expuestos en el caso de Ledesma, resolvimos que si un contrato partici-

paba de todas las condiciones expresadas en el artículo 1228 del Código Civil, no era, excepto en ciertos casos, absolutamente nulo. Decidimos, además, que la prohibición del artículo 1362 del Código Civil era tan fuerte como la contenida en el artículo 1328. *Quiñones* v. *Registrador de la Propiedad,* 20 D.P.R. 507, y *Caballero* v. *Pomales,* 17 D.P.R. 719, fueron otros casos citados en el de Cortijo al efecto de que actos anulables de un tutor o de un esposo podían ser ratificados.

*Carrasquillo* v. *Bertrán,* 26 D.P.R. 582, fué un caso relativo a un contrato celebrado por un menor. Después de resolverse que solamente el menor puede instituir un procedimiento de nulidad de contrato contra el cesionario, la corte dijo: ''Pero si en vez de eso, por su espontánea voluntad, ya en su mayoría de edad, reconoce la existencia del acto y lo confirma, tal confirmación es todo lo que se necesita para que el acto nulo quede convertido en válido de acuerdo con lo dispuesto en los artículos 4, 1228, 1277, y 1278 del Código Civil,'' citando autoridades.

En *Silva Hermanos* v. *Registrador de San Juan,* 28 D.P.R. 177, al discutir la venta efectuada por un principal a un agente, dijimos:

'' . . . pero de todos modos tal compra no es nula de acuerdo con el No. 2do. del Artículo 1362 del Código Civil porque como dijo este Tribunal Supremo en el caso de Mancheño v. Le Brun, 14 D.P.R. 482, arguyendo bajo la base de una venta otorgada por el mandante a su mandatario, 'desde el momento en que el mismo mandante vende esos bienes a su mandatario hace cesar el mandato dado y recupera el poder de vender y de administrar que había otorgado, desapareciendo así el motivo legal de la incapacidad.' Esa prohibición de la ley ha sido siempre interpretada restrictivamente por oponerse a la libertad de contratación, es ratificable el contrato y prescriptible la acción para pedir su nulidad, habiendo transcurrido en este caso veinte y siete años desde su otorgamiento. Bengoa v. El Registrador, 14 D.P.R. 109; Ledesma v. Agrait, 19 D.P.R. 566; Turner v. El Registrador, 22 D.P.R. 573; Seoane v. El Registrador, 23 D.P.R. 813; Castelló v. Pérez, 23 D.P.R. 770.''

*Mancheño* v. *Le Brun et al., supra,* fué un caso importante, escrito por el Juez Asociado Sr. Figueras, en el que resolvimos que:

"Hemos visto ya que Paz con capacidad legal y a nombre de 'Sucesores de L. Sarria' vendió esos bienes a Le Brun por escritura pública de 22 de abril de 1904 y desde el momento en que el mismo mandante vende esos bienes a su mandatario, hace cesar el mandato dado y recupera el poder de vender y de administrar que había otorgado, desapareciendo así el motivo legal de la incapacidad que consiste, según Q. Mucius Scaevola, tomo 23, página 403, en el que el mandatario forma con el mandante una sola 'persona jurídica, y si no existiera tal prohibición para comprar resultaría que los mandatarios podrían venderse y comprarse una misma cosa a sí propios, desapareciendo o confundiéndose los conceptos de cedente y de cesionario en la compra-venta.' "

*Just* v. *Just,* 32 D.P.R. 248, envolvía la cuestión de matrimonios anulables. Resolvimos que el matrimonio en dicho caso podía ser ratificado al igual que cuando una pupila se casaba con un tutor antes de aprobarse las cuentas de la tutela.

*Vargas* v. *Cruz,* 32 D.P.R. 27, fué un caso en que resolvimos que el contrato en cuestión no podía ser ratificado debido a la política de la ley. Citamos el caso de *Ledesma* v. *Agrait, supra,* y dijimos que la cuestión de si un contrato podía ser ratificado o no, dependía de la naturaleza del contrato.

De estas citas es evidente que la cuestión de si un contrato puede ser ratificado, o aun inscrito, depende de la naturaleza esencial del contrato. Hemos resuelto específicamente que cuando un mandante le vende a su agente, el contrato no solamente ha quedado ratificado, sino que la prohibición desaparece; que el mandato deja de existir. No sólo *Ledesma* v. *Agrait* sino todos los demás casos demuestran que la prohibición contenida en el artículo 1362 no es absoluta. El contrato que tenemos bajo nuestra consideración es uno en que todas las partes interesadas han prestado su consentimiento.

El artículo 1360 del Código Civil lee así:

"Podrán celebrar el contrato de compra y venta todas las personas a quienes este código autoriza para obligarse, salvo las modificaciones contenidas en los artículos siguientes."

El artículo 1597, en su inciso 1, dispone:

"Todos los socios se considerarán apoderados, y lo que cualquiera de ellos hiciere por sí solo obligará a la sociedad; pero cada uno podrá oponerse a las operaciones de los demás antes que hayan producido efecto legal."

Por tanto, cualquier socio puede efectuar una venta, a menos que le esté prohibido por el artículo 1362. El socio que efectúa una venta es el agente o apoderado que actúa de conformidad con el artículo 1597, inciso 1. La prohibición contenida en el artículo 1362, por consiguiente, se extiende a él. Es la persona a que hace referencia el artículo 1597, inciso 1. El socio adquirente no es un agente de la sociedad, según el artículo 1597, inciso 1, ya que no está realizando ningún acto a nombre de la sociedad.

El espíritu del artículo 1597, inciso 1, es dar vida a la sociedad y hacer que ella sea responsable al mundo en general de cualquiera de los actos de sus socios gestores. Nada hay en dicho artículo que impida que un socio adquiera bienes pertenecientes a la sociedad, con el consentimiento de los demás socios. Si se examina el artículo 1362 se notará que su espíritu es impedir fraudes y en determinado caso proteger a los mandantes o al público de actos torticeros de sus agentes. Nunca fué la intención de la Legislatura impedir que una razón social, cuando todos los socios dan su consentimiento, haga lo que crea más conveniente para sus propios intereses en cualquier forma, según provee el artículo 1360, *supra*. No hay indicación alguna de fraude y los registros públicos no deben cerrarse debido a tal posibilidad.

Según el artículo 2 de la Ley Hipotecaria, todas las ena-

jenaciones de bienes deben ser inscritas. La sociedad en cuestión, en este caso está absolutamente impedida en lo que a cualquiera de los dos socios individuales se refiere, de negar tal enajenación. No hay ningún interés público que sea superior al derecho que tienen los individuos de otorgar sus propios contratos. Según el artículo 4 del Código Civil, todos los derechos son renunciables. Eliminando la cuestión de fraude, nadie en el mundo tiene derecho a dudar la validez de la enajenación hecha en este caso.

La mera posibilidad de que una enajenación se efectúe posiblemente en fraude de acreedores, no es suficiente para impedir la inscripción. El fraude no se desprende de la faz del documento y el registrador no basa su negativa en el fundamento de fraude. Si la posibilidad de que una enajenación fuese fraudulenta fuera motivo para denegar la inscripción, entonces la enajenación más inocente efectuada por un comerciante o cualquiera otra persona, estaría tal vez sujeta a demoras y negativas. El fraude nunca se presume sino que la presunción es que un contrato ha sido efectuado de buena fe.

En adición a la posibilidad de que tal interpretación estricta del artículo 1362 conduciría a resultados absurdos, también existe el principio de que la enajenación de bienes debe ser sin restricciones hasta que aparezca una razón en contrario.

Si cualquiera de estos socios instituyera un pleito ante la corte de distrito para obligar a la sociedad a reconocerle su título, nadie podría ser oído en oposición a dicho pleito. Ninguna persona tendría suficiente interés en el litigio para oponerse al mismo. Parecería indisputable que si un contrato nulo por falta de consentimiento de las partes puede ser ratificado, entonces un contrato puede ser otorgado por todas las partes que intervienen en él directamente.

*Debe revocarse la nota recurrida.*

El Juez Asociado Sr. Texidor disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. TEXIDOR

Disiento de la opinión y de la resolución en estos dos casos.

El artículo 1362 del Código Civil establece una incapacidad para comprar. No se trata de las incapacidades generales para contratar, sino de una especial para el contrato de compraventa, y dentro de él, especialísima, por cuanto se refiere, no a los dos contratantes, sino al posible comprador tan sólo.

A mi entender, no es dudoso que el socio gestor de una sociedad, civil o mercantil, es un mandatario de la misma. Y de aquí la afirmación de que él se halla comprendido en la incapacidad para comprar los bienes que están bajo su administración. El precepto legal, al establecer la incapacidad dice:

"Art. 1362.—No podrán adquirir por compra, aunque sea en subasta pública o judicial, por sí ni por persona alguna intermedia:

" *      *      *      *      *      *      *

"2.—Los mandatarios, los bienes de cuya administración o enajenación estuviesen encargados.''

Ni aún mediando la solemnidad de una subasta judicial, cabe que el mandatario adquiera por compra esa clase de bienes.

Quizá cuando se trata de un contrato de mandato, puramente voluntario, la circunstancia de que sea el mandante el que venda a su mandatario, dé a éste la capacidad para comprar. El mandato, según el artículo 1635 del Código Civil, cesa cuando cesa la voluntad del mandante. Si éste no quiere ser representado en un acto o contrato, y recobra su personalidad jurídica para efectuarlo, es indudable que mientras él está realizando tal acto, o perfeccionando o consumando tal contrato, no hay justificación para que otra persona le represente; y entonces, el mandatario ha dejado de ser tal, y la incapacidad para comprar, que precisamente se funda en ese carácter, y en el hecho de estar adminis-

trando aquellos bienes, desaparece, porque han desaparecido las bases, carácter de mandatario, y sujeción de los bienes a su administración.

Pero en este caso, la gestión en la sociedad mercantil, o en la civil, no es algo que nace solamente del arbitrio de los contratantes: el mandato aquí está determinado por la ley, ya que no puede existir sociedad alguna sin gestores o administradores. Y ese mandato no crea sólo una relación entre los socios, sino una multitud de relaciones con respecto a terceros. No cesa aquí el mandato como en el caso a que antes aludo; sino solamente en los casos de disolución de la sociedad, y en los de destitución de los gestores. De no ser así, el gestor y administrador de la sociedad, es siempre su mandatario; y en ese concepto nó puede adquirir por compra los bienes de cuya administración se halla encargado.

Es importante el hecho a que se refiere el artículo 1362, al decir: "los bienes de cuya administración o enajenación estuviesen encargados." La administración de esos bienes es uno de los fundamentos principales de la incapacidad. Mientras los bienes se hallen bajo la administración de los gestores, éstos no pueden adquirirlos. Y la sociedad, como entidad legal, tendrá la propiedad o la posesión de esos bienes, pero no tiene la administración de otra manera que no sea por medio de los gestores.

Las ventas de que en estos casos se trata son nulas, porque falta en ellas el comprador, ya que no puede serlo el que como tal aparece.

*Deben confirmarse las notas recurridas.*