474

Alfonso E. Delgado, demandante y apelante, *v.*
Agustina Monroig, demandada y apelada.

Núm. 7774.—*Sometido:* Marzo 14, 1940.  *Resuelto:* Julio 26, 1940.

*Dubón & Ochoteco,* abogados del apelante;  *Tomás Bernardini de la Huerta,* abogado de la apelada.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

El demandante y la demandada contrajeron matrimonio el 14 de diciembre de 1935 y la sociedad de gananciales entre ellos surgió desde entonces.  Algún tiempo después la esposa instó demanda de divorcio.  Luego de iniciarse el pleito, en 29 de julio de 1937, las partes firmaron un contrato privado, cuyas cláusulas esenciales son las siguientes:

"*Quinto:* Las partes convienen, de mutuo acuerdo y por el presente documento, que caso de que prospere la acción de divorcio pendiente según se ha referido anteriormente, ante el Tribunal de Distrito del Distrito Judicial de Bayamón, y ser dictada sentencia declarando roto y disuelto el vínculo matrimonial que los une, y ser firme la sentencia, que la sociedad de gananciales existente entre ambos comparecientes se liquide en la siguiente forma:

"1. Que el establecimiento mercantil, conocido con el nombre de 'Farmacia Olimpo', anteriormente mencionado sea adjudicado exclusivamente al compareciente Alfonso E. Delgado, con la obligación de éste pagar, por su cuenta, todas las deudas que estuvieren pendientes de pago en el referido negocio de farmacia, hasta el momento mismo de haberse radicado la demanda de divorcio a que se hace mención anteriormente.

"2. Que doña Agustina Monroig pagará al otro compareciente don Alfonso E. Delgado, de contado e inmediatamente que sea firme la sentencia de divorcio que pueda recaer, según antes se deja dicho, la suma de tres mil dólares ($3,000) que se destinarán a la extinción de las deudas del negocio de farmacia referido, pendientes hasta el momento de la radicación de la demanda tantas veces mencionada.

"3. Que con excepción de las deudas pendientes de pago por concepto de la 'Farmacia Olimpo', cuya obligación asume el compareciente Delgado, conforme al inciso primero anterior, todas las otras deudas u obligaciones que corresponden a la sociedad de gananciales serán satisfechas íntegramente por la otra compareciente, doña Agustina Monroig, a excepción de aquéllas que hayan sido o sean contraídas, por cualquier concepto, además de aquél del negocio de farmacia por el Sr. Delgado, a nombre propio, las cuales serán satisfechas por éste.

"4. Que en consideración a las adjudicaciones en favor del compareciente Delgado, sobre la farmacia y el efectivo, en la forma establecida anteriormente, éste renunciará a todo derecho, acción o interés que tenga o pueda tener en cualesquiera bienes de cualquier naturaleza de la sociedad de gananciales o privativos de la señora Monroig, con excepción de la farmacia y el efectivo, tal y como se deja estipulado en el presente documento.

"5. Que doña Agustina Monroig renunciará cualquier reclamación que tenga o pueda tener contra el compareciente Delgado, y éste renunciará cualquier reclamación que tenga o pueda tener contra la compareciente doña Agustina Monroig, una vez que sea otorgado a su favor el correspondiente documento traspasándole la mencionada 'Farmacia Olimpo' y pagados los tres mil dólares en efectivo a que se hace referencia anteriormente, con excepción de aquellas reclamaciones que pudieran surgir por dejar, cualquiera de las partes, incumplida alguna de las condiciones de este contrato o del que, en definitiva, se otorgue sobre la liquidación de la sociedad de gananciales actualmente existente, por ministerio de la ley, entre las partes contratantes.

"6. Se hace constar, de una manera expresa y terminante, que este convenio en forma alguna ha de interpretarse ni de su letra ni de su espíritu, que alguna de las partes renuncia a cualquier derecho de defensa que le asista en la acción de divorcio que está pendiente y se menciona en el hecho primero de la parte expositiva de este documento, derecho o derechos que podrá ejercitar libremente aquella parte a quien le asisten, sin limitación de clase alguna."

La esposa obtuvo sentencia de divorcio a su favor y después que la misma se hizo firme el demandante radicó un pleito sobre "cumplimiento específico de contrato" que termina así:

"Por lo expuesto, a la Hon. Corte solicita se dicte una sentencia en este caso, por la que se declare liquidada la sociedad de gananciales que existía entre el demandante y la demandada sobre las bases, estipulaciones y condiciones contenidas en el contrato celebrado entre el demandante y la demandada que se consignó en el documento del 29 de julio de 1937 a que se refiere esta demanda y en su virtud que se condene a la demandada a pagar al demandante la suma de $3,000 a lo que quedó obligada por el contrato de referencia, intereses legales sobre esta suma desde esta fecha y hasta la de su total pago, y las costas de este pleito incluyendo honorarios de abogado."

La demandada presentó excepción previa fundada en que la demanda no aducía una buena causa de acción. De la opinión se desprende que la excepción se basó específicamente en cinco causas distintas contenidas en un alegato radicado en la corte de distrito. Dicha corte declaró sin lugar tres de ellas y sostuvo la excepción fundada en las dos últimas, y dictó sentencia en favor de la demandada. La reconsideración fué declarada sin lugar. La opinión de la corte inferior se basó en los artículos 1297 y 1316 del Código Civil (ed. 1930) que proveen:

"Artículo 1297. La renuncia a esta sociedad no puede hacerse durante el matrimonio sino en el caso de separación judicial.

"Cuando la renuncia tuviere lugar por causa de separación, o después de disuelto o anulado el matrimonio, se hará constar por escritura pública, y los acreedores tendrán el derecho que se les reconoce en el artículo 955.

"Artículo 1316. Disuelta la sociedad, se procederá desde luego a la formación del inventario; pero no tendrá éste lugar para la liquidación:

"1. Cuando disuelta la sociedad, haya renunciado a sus efectos y consecuencias en tiempo hábil, uno de los cónyuges o sus causahabientes.

"2. Cuando a la disolución de la sociedad, haya precedido la separación de bienes.

"3. En el caso a que se refiere el párrafo segundo del artículo anterior.

En el caso de renuncia, quedará siempre a salvo, el derecho concedido a los acreedores por el artículo 955."

La corte también cita de Manresa, Comentarios al Código Civil, tomo 9, páginas 551 *et seq*.

El apelante sostiene que el convenio entre las partes fué un contrato de promesa. El Código Civil habla de ciertos casos en que el contrato de promesa puede prevalecer, mas conforme los leemos, existen siempre casos en que el contrato principal mismo hubiera servido a las partes al momento de otorgarse el contrato. Es decir, el marido y la mujer pueden hacerse la promesa de realizar cualquier cosa durante el matrimonio que de lo contrario ellos tendrían derecho a hacer, al igual que cualesquiera otras partes. El tratar de transferir al campo de la promesa para ejecutar un contrato del campo de los contratos mismos, nos parece que equivale meramente a un cambio de nomenclatura. Si durante la existencia de la sociedad de gananciales no puede celebrarse un contrato, el pacto de ejecutarlo luego de disuelto el matrimonio está sujeto exactamente a la misma objeción.

El apelante señala el siguiente error:

"La corte erró al resolver que la demanda en este caso no aduce hechos suficientes para constituir una causa de acción."

Lo sostiene con las siguientes contenciones:

"1. Que el contrato en controversia no infringe los principios que regulan el régimen de la sociedad de gananciales; y

"2. Que concediendo que los infringiera, habiendo la demandada aceptado los beneficios del aludido contrato, está impedida de negar su validez."

El apelante citó en la corte inferior y nuevamente en apelación el caso de *De la Rama* v. *De la Rama,* 7 Jurisprudencia Filipina 765. La opinión citada fué dictada después

del caso haber sido visto en apelación, y devuelto, por la Corte Suprema de los Estados Unidos. La parte específica de la opinión lee así:

"Decía el demandado en el alegato por él presentado en su apelación original a esta corte en apoyo de este fundamento de recurso, que no era procedente liquidar la sociedad conyugal dentro del mismo juicio de divorcio y que no podía hacerse tal liquidación de dichos bienes, en tanto no hubiese recaído sentencia firme de divorcio y en su informe ante esta corte en el acto de la vista de la moción presentada en 2 de noviembre de 1906, insistió en la misma pretensión.

"En nuestro sentir, sin embargo, este fundamento de recurso fué resuelto por la sentencia del Tribunal Supremo de los Estados Unidos. Como se dijo en aquella decisión, la competencia de aquel Tribunal dependía en un todo de aquella parte de la sentencia del Juzgado de Primera Instancia relativa al pago de los 81,000 pesos. Si el Juzgado de Primera Instancia carecía de competencia para ordenar el pago de cantidad alguna de dinero en un juicio de divorcio, aquella parte de la sentencia tendría que ser eliminada. Al conocer del asunto el Tribunal Supremo de los Estados Unidos tuvo necesariamente que declarar que dentro del juicio de divorcio podía procederse a la liquidación de los bienes de la sociedad conyugal. El demandado no puede por tanto insistir por ahora en el quinto motivo de recurso." (7 Jurisp. Filipina 768.)

Es evidente que en dicho caso hubo una situación distinta y que la división de la propiedad tuvo lugar en el mismo momento o de acuerdo con la ley, cuando la separación ya existía.

Otro caso citado lo fué el de *Palomar Baldovi* v. *Sarte,* 36 Jurisprudencia Filipina 585. En ese caso el marido y la mujer celebraron un contrato durante el matrimonio mientras estaba pendiente una acción de divorcio. A virtud de dicho contrato ellos se dividieron sus bienes y la esposa asumió ciertas deudas que serían pagadas tan solo en caso de que se obtuviera una sentencia de divorcio. La Corte Suprema de Filipinas dijo:

"El artículo 1432 del Código Civil dispone:

" 'A falta de declaración expresa en las capitulaciones matrimoniales, la separación de bienes entre los cónyuges durante el matri-

monio no tendrá lugar sino en virtud de providencia judicial, salvo el caso previsto en el artículo 50.'

"Por el claro precepto de este artículo, queda demostrado que el contrato de separación estipulado entre los consortes Rodolfo G. Tuyet y Manuela Sarte no puede producir efecto legal ni en su virtud puede ser obligada la demandada Sarte al cumplimiento de lo convenido entre ambos, hasta que haya recaído en el expediente promovido por el marido sentencia judicial de divorcio y de separación de bienes, pues dicha obligación de la esposa se halla supeditada a la indicada condición décima de la escritura *Exhibit* A." (36 Jurisp. Filipina 590.)

Con respecto a este caso y al anterior, el juez de distrito dijo en su resolución declarando sin lugar la moción de reconsideración:

"Sostiene el demandante en su moción de reconsideración que hemos infringido las dos sentencias del Tribunal Supremo de Filipinas que nos cita. A esa impugnación debemos contestar que la jurisprudencia de Filipinas no es obligatoria en esta jurisdicción, y que sólo debemos seguirla cuando los fundamentos que le sirvan de base lleven a nuestro ánimo la convicción de que es correcta. Hemos examinado las dos sentencias citadas, y con la mayor deferencia para dicho alto Tribunal, no nos convencen de la corrección de sus conclusiones. Por consiguiente, no estamos obligados a supeditar nuestro criterio al expresado por aquel tribunal."

Especialmente aplicable lo es la sentencia de la Corte Suprema de España de diciembre 12 de 1899 (88 Jurisprudencia Civil 520).

Los hechos de ese caso son los siguientes:

Cayetano Buquerín, viudo, contrajo matrimonio con María Palomar el 7 de febrero de 1872. Otorgaron una escritura a virtud de la cual establecían las cantidades que cada uno había aportado a la sociedad, así como los bienes pertenecientes a los hijos habidos en el primer matrimonio. Algún tiempo después el marido demandó a la mujer para que se resolviera la cuestión de si ciertos pagos efectuados por el marido debían cargarse a los bienes privativos de la esposa. Este pleito fué transigido fuera de la corte por las partes y

cntonces otorgaron una escritura a ese efecto en septiembre 26 de 1880. A la muerte de Buquerín su esposa atacó la liquidación que se había hecho de la sucesión. La corte de primera instancia declaró nulo e ineficaz el contrato de septiembre 26 de 1880. Los herederos apelaron. El Tribunal Supremo de España se expresó así:

"Resultando que D. Julián Buquerín Bartolomé ha interpuesto recurso de casación por infracción de ley, fundado en el caso 1°. del artículo 1692 de la de Enjuiciamiento Civil, alegando: que la sentencia recurrida, al declarar nulo el contrato de transacción de 26 de septiembre de 1880, aplicaba indebidamente el art. 1458 del Código Civil (1347 de Puerto Rico), que dispone que el marido y la mujer no podrán venderse bienes recíprocamente sino cuando se hubiese pactado la separación de bienes o cuando hubiera separación judicial de los mismos, autorizada con arreglo al capítulo 6°., tít. 3°., libro 4°. de dicho cuerpo legal; porque por la referida escritura D. Cayetano Buquerín y Doña María Palomar no se habían vendido bienes algunos, sino que para evitar cuestiones, Doña María había declarado los gastos hechos con sus hijos para no perjudicar a los de su marido, pero no le había traspasado, enajenado ni vendido bienes ni derechos de ninguna clase; y que también aplicaba indebidamente al contrato de referencia el art. 1811 del Código Civil puesto que D. Cayetano Buquerín y Doña María Palomar no habían transigido sobre los derechos dotales, ni Doña María había vendido aquéllos a su marido, pues se había limitado a declarar los gastos hechos con sus hijos, autorizándole para hacer lo propio con los suyos.

"Visto, siendo Ponente el Magistrado D. Diego Montero de Espinosa.

"Considerando que no se ha infringido en la sentencia, por indebida aplicación, el art. 1458 del Código Civil (1347 de Puerto Rico) que sirve de fundamento al primer motivo del recurso, porque si bien la escritura de 26 de octubre de 1880 no determina propiamente un contrato de venta entre marido y mujer, que es el que prohibe celebrar dicho artículo, no cabe duda que constituye el de transacción, el cual exige, por su semejanza y analogía con el de venta, los mismos requisitos de capacidad en los contratantes, y alcanza por la misma razón la prohibición de celebrarse entre marido y mujer:

"Considerando que también ha sido rectamente interpretado en la sentencia el art. 1811 del Código Civil invocado en el segundo

motivo, porque si la dote, según el 1336, la constituye los bienes y derechos que en este concepto aporta la mujer al tiempo de constituirse el matrimonio, y las hechas al contraer el suyo Doña María Palomar, quedaron por la escritura de 26 de octubre de 1880 afectas al resultado de la transacción, es visto que ésta versó sobre los bienes y derechos dotales que expresamente prohibe el artículo invocado.''

El artículo 1458 del Código Civil español es igual al 1347 de nuestro código (edición de 1930). Provee:

''El marido y la mujer no podrán venderse bienes recíprocamente, sino cuando se hubiese pactado la separación de bienes, o cuando hubiera separación judicial de los mismos bienes, autorizada con arreglo al capítulo V, título III, de este libro.''

Comentando ese artículo dice Manresa:

''...es indudable que aquellos contratos entre marido y mujer que lleven consigo un cambio de sistema o alguna alteración en el régimen de bienes del matrimonio, son desde luego nulos.'' Manresa, Comentarios al Código Civil 10, pág. 92.

El entonces juez de distrito, hoy Juez Asociado Sr. De Jesús, citó de Manresa así:

''El artículo 1394 (igual al 1297 del nuestro) trata, pues, de la renuncia de los gananciales obtenidos durante la sociedad, y sólo la consiente cuando ya se sabe si existen o no; cuando la sociedad ha terminado por cualquiera de las causas expresadas en el artículo 1147, en la única época en que los cónyuges tienen ya, no una simple esperanza, sino un derecho adquirido sobre las ganancias, caso de haberlas en el matrimonio.'' 9 Manresa, Código Civil, 551.

''. . . . . . . .

''Con arreglo a la doctrina del código, según hemos dicho, pueden renunciar los gananciales, tanto el marido como la mujer, pero sólo después de terminada la sociedad conyugal.'' Id., pág. 553.

Al comentar el artículo 1420 del Código español (1316 del nuestro), Manresa ha dicho:

''No puede aludir el artículo a una separación convencional de los bienes, porque establecido el régimen de gananciales, tal separación, que equivale a una alteración del régimen durante el matrimonio, no tiene valor legal alguno.'' Manresa, op. cit., 9, pág. 684.

El apelante también citó el caso de *Henna et al.*, v. *Saurí & Subirá*, 22 D.P.R. 836. Ese caso trata de la ejecución de un contrato sujeto a una condición y no envolvía la nulidad *ab initio* del contrato.

En cuanto a que la demandada está impedida *(estopped)* de atacar el contrato, podría decirse que ella puede que haya tratado de repudiar o renunciar sus derechos, pero que la renuncia es ineficaz por ser nulo el contrato.

El artículo 4 del Código Civil dispone:

"Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez.

"Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero."

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.