GENEROSO, ALFONSO y ETELVINA ZAYAS HERNÁNDEZ, demandantes y apelantes, *v.* JUAN ORRACA MARTÍNEZ y JACINTO ZAYAS HERNÁNDEZ, demandados y apelados.

Número 11397.

*Reasignado:* 11 de diciembre de 1957. *Resuelto:* 21 de mayo de 1957.

([11]) 33 L.P.R.A. sec. 821; *Pueblo* v. *Bocanegra*, 27 D.P.R. 887.

*Pedro E. Anglade* y *Guillermo Cintrón Ayuso,* abogados de los apelantes; *Víctor M. Pons,* abogado de los apelados.

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Se debate principalmente en este recurso la suficiencia de una demanda sobre declaración de inexistencia de cierto procedimiento ejecutivo sumario, fundamentada en la alegada nulidad del contrato de hipoteca que le sirvió de base.

La demanda fué radicada en el antiguo Tribunal de Distrito, Sección de Caguas, el 28 de abril de 1952. Resumidos, los hechos contenidos en la primera y predominante causa de acción son los siguientes:

Por escritura pública otorgada el 17 de agosto de 1928, Encarnación Hernández Ramos y tres de sus hijos llamados Generoso, Alfonso y Etelvina Zayas Hernández, constituye-

ron una sociedad civil, particular de ganancias, con fines agrícolas, por el término de diez años, que operaría bajo la razón social de "Sociedad Agrícola Zayas"; tendría su domicilio en el barrio Beatriz del municipio de Cidra; se formó el capital social aportando Encarnación Hernández Ramos su condominio de una mitad y cada uno de sus mencionados tres hijos su respectivo condominio de una octava parte, sobre once fincas rústicas situadas en dicho barrio; fué designado gerente, o socio gestor, Generoso Zayas Hernández, pero, para los fines de gravar, hipotecar o enajenar bienes inmuebles de la sociedad, fueron nombrados mandatarios de la misma, además de Generoso, los otros socios Encarnación Hernández Ramos, Alfonso y Etelvina Zayas Hernández.

A la fecha de constituirse la sociedad Etelvina Zayas Hernández estaba casada con Lucas Yon Rodríguez, quien compareció en la escritura a prestar su consentimiento para su constitución; el 3 de septiembre de 1929, la sociedad, representada por todos sus socios y mandatarios, incluyendo Etelvina Zayas Hernández, constituyó hipoteca voluntaria sobre "los bienes de la Sociedad" a favor de Lucas Yon Rodríguez—esposo de la socia mandataria Etelvina Zayas Hernández—para garantizarle el pago de $9,448.90, y créditos adicionales para intereses, costas, gastos y honorarios de abogado; el contrato de hipoteca fué inscrito en el Registro de la Propiedad; en agosto de 1939 Lucas Yon Rodríguez y su esposa Etelvina Zayas Hernández cedieron la hipoteca a Agapito Vázquez, quien a su vez la cedió a Juan Orraca Martínez, registrándose ambas cesiones.

Vencido el crédito hipotecario, para su cobro Juan Orraca Martínez tramitó contra la "Sociedad Agrícola Zayas", ante la extinta Corte de Distrito del Distrito Judicial de Caguas, un procedimiento sumario hipotecario que culminó en la adjudicación a su favor de los condominios aportados originalmente a la Sociedad.

La Sociedad terminó, al expirar, el 17 de agosto de 1938, sin prorrogarse, el plazo de su constitución; Encarnación

Hernández Ramos falleció heredándola los demandantes Generoso, Alfonso y Etelvina Zayas Hernández y su otro hijo Jacinto Zayas Hernández, a quien, nominalmente, se hizo parte codemandada en esta acción.

Como fundamentos para solicitar la declaración de inexistencia y nulidad absoluta de la reseñada ejecución sumaria hipotecaria se exponen los siguientes:

I.—"Que en el supuesto contrato de hipoteca celebrado ya referido no se pactó el lugar del pago y éste tenía que efectuarse en el domicilio de la deudora en el Barrio Beatriz de Cidra, Puerto Rico, y en el escrito inicial no hay alegación de que el demandante por sí o por legítimo apoderado se personara en el domicilio de la sociedad deudora a recibir o a cobrar el supuesto crédito hipotecario a su vencimiento.

II.—"Alegan los demandantes que la supuesta escritura por la cual se apareció como constituyendo hipoteca a favor de don Lucas Yon Rodríguez no fue una por la cual se constituyera hipoteca de clase alguna y es nula e inexistente desde su otorgamiento toda vez que una de las mandatarias de la indicada Sociedad Agrícola Zayas doña Etelvina Zayas Hernández quien según aparece de la propia escritura de constitución de sociedad estaba casada cuando se constituyó la Sociedad Agrícola Zayas con don Lucas Yon Rodríguez, y estaba dicha mandataria al otorgarse dicha supuesta escritura de hipoteca aún casada con el indicado Lucas Yon Rodríguez el supuesto acreedor hipotecario, aparecía como constituyendo hipoteca la indicada propia mandataria Etelvina Zayas Hernández a favor de sí misma y adquiriendo la mandataria para sí y para la sociedad de gananciales constituída por dicho Lucas Yon Rodríguez y Etelvina Zayas Hernández un supuesto derecho de hipoteca sobre los bienes de su indicada mandante la Sociedad Agrícola Zayas por lo que la supuesta escritura de hipoteca no era inscribible en el Registro de la Propiedad y ni don Lucas Yon Rodríguez ni don Agapito Vázquez y don Juan Orraca Martínez adquirieron derecho de hipoteca alguno sobre los bienes de la indicada Sociedad Agrícola Zayas y en su consecuencia de haber adquirido don Juan Orraca Martínez algún derecho, que lo negamos, lo más que adquirió por aquella escritura fue un dudoso crédito escriturario para cuyo cobro el procedimiento ejecutivo sumario hipotecario no procede."

La segunda causa de acción ejercitada es la subsidiaria de reclamación contra el acreedor ejecutante por frutos percibidos o dejados de percibir desde que los condominios fueron subastados.

Contra la demanda formuló Orraca Martínez una moción de desestimación fundada en que (*a*) "no aducía hechos constitutivos de una causa de acción; (*b*) no aducía hechos constitutivos de causa de acción porque la acción de nulidad ejercitada fue fundada en la alegada nulidad de la hipoteca y dicha hipoteca no sería nula sino meramente anulable, habiendo prescrito la acción para anularla de conformidad con lo dispuesto en el art. 1253 del Código Civil de Puerto Rico y (*c*) que no aducía hechos constitutivos de causa de acción por daños y perjuicios en cuanto a la segunda causa de acción, por estar prescrita, de acuerdo con lo dispuesto en los artículos 1864 y 1869 del mismo código."

El 30 de diciembre de 1953 el Tribunal Superior, Sala de Caguas, resolvió que la demanda no aducía hechos constitutivos de causa de acción y que la acción de nulidad del procedimiento ejecutivo fundada en la nulidad de la hipoteca, de existir, estaba prescrita; concedió a los demandantes un término de diez días para enmendar la demanda de ser la misma susceptible de enmienda. No habiéndose enmendado la demanda dentro de ese término, el tribunal, a solicitud de Orraca Martínez, el día 26 de abril de 1954 dictó sentencia declarando sin lugar la demanda.

Establecieron los demandantes el presente recurso, señalando la comisión de dos errores.

(1) Por el primer señalamiento sostienen que cometió error el tribunal a quo al concluir que fue válido el contrato de hipoteca celebrado entre la sociedad, representada por todos sus socios y mandatarios, como deudora hipotecante, y Lucas Yon Rodríguez como acreedor hipotecario, porque en la constitución del gravamen intervino Etelvina Zayas Hernández, esposa del acreedor original, como "una de las mandatarias de la sociedad y firmante de dicha

escritura, según todo ello aparece relacionado en la escritura así como en el apartado quinto de la demanda." [1]

La corte sentenciadora resolvió que el contrato de hipoteca no fue nulo porque el art. 1348 del Código Civil, en su inciso 2, únicamente prohibe al mandatario la adquisición *por compra* de los bienes de cuya administración o enajenación estuviese encargado, y el contrato impugnado fue uno de hipoteca otorgado por todos los socios y mandatarios.

Al resolverlo así actuó correctamente. Como regla general de capacidad, el art. 1346 del mismo código dispone que "podrán celebrar el contrato de compra y venta todas las personas a quienes este código autoriza para obligarse, salvo las modificaciones contenidas en los artículos siguientes." Entre las modificaciones de la capacidad para adquirir por compra, el art. 1348 enumera la del mandatario en relación con los bienes, que, en el momento de realizarse la venta, se encuentren bajo su administración o sujetos a su facultad para enajenarlos. Esta prohibición hace imposible la autocontratación o contrato consigo mismo y produce una incapacidad especial o relativa. Constituyendo ese precepto una materia excepcional y prohibitiva—establecida en beneficio del propietario para obviarle dificultades en la prueba del fraude o engaño con que hubiera obrado el administrador—es de interpretación restringida y no cabe aplicarse extensivamente, ni aun por razón de analogía, a personas y cosas que no comprende. [2]

---

[1] La escritura social no forma parte de los autos elevados en apelación, ni su contenido se inserta, total o parcialmente, en la demanda; tampoco se deduce de las alegaciones que fuera sometida al tribunal sentenciador. En casos como el presente, en los que pueden los tribunales llegar a disponer definitivamente de los mismos a base de mociones de desestimación, y de cuyos hechos esenciales normalmente existen constancias auténticas en los archivos judiciales, protocolos notariales y regìstros de la propiedad, sería aconsejable, para mejor resolver, que las partes —por lo menos la proponente de la moción—proveyeran al tribunal de las certificaciones necesarias acreditando antecedentes de hecho pertinentes no revelados por las alegaciones.

[2] *Vázquez* v. *Martínez*, 17 D.P.R. 1134, 1145 (1911) ; *Martínez* v. *Registrador*, 26 D.P.R. 559, 561 (1918) ; *Silva Hno. & Cía.* v. *Registrador*, 28 D.P.R. 177 (1920).

Para que esa incapacidad relativa pueda ser acertadamente aplicada deben reunirse dos requisitos: primero, que en el acto de la compraventa el mandatario actúe a un tiempo con la doble personalidad de vendedor en representación ajena y comprador en su propio y personal derecho, y segundo, que el contrato así otorgado produzca la definitiva e irrevocable trasmisión a favor del comprador. [3]

Sin embargo, para que no se burle el principio de moralidad y conciencia en que se inspira esta interdicción limitada de la capacidad para adquirir por compra—que en Derecho sólo puede referirse al mandatario con expresas atribuciones para ejecutar actos de riguroso dominio y no al mero administrador—y aun cuando no se debe interpretar con criterio amplificativo, la prohibición puede extenderse a todo acto jurídico o contrato que se equipare a la compraventa en sus efectos trasmisivos, definitivos e irrevocables, como la dación en pago, la promesa de venta, la permuta, la cesión de créditos, derechos y acciones, el censo reservativo y la transacción. [4] Al contrato de hipoteca jamás puede atribuirse eficacia traslativa; el deudor hipotecante—en este caso el mandante—tiene expedito el medio de dejar sin efecto la garantía por el pago de lo adeudado, estando legalmente proscrito todo pacto de comiso. Por esta razón se ha declarado fuera del alcance del obstáculo técnico que representa el art. 1348 a las ventas con pacto de retro. [5]

■ Apoyándose en la doctrina sentada por este Tribunal Supremo en los casos de *Mancheño* v. *Le Brun*, 14 D.P.R. 474, *Silva Hno. & Cía.* v. *Registrador*, 28 D.P.R. 177, *Oxios* v. *Registrador*, 39 D.P.R. 447 y *Zalduondo Mier & Co.* v. *Reglero & Castrillo*, 44 D.P.R. 633, concluyó el tribunal sen-

---

[3] Sentencias de 17 de junio de 1920 y 10 de marzo de 1953, Tribunal Supremo de España.

[4] Arts. 1146, 1340, 1416, 1428–1431, 1499 y 1709–1715, Código Civil. Cf. *Durán* v. *Registrador*, 20 D.P.R. 148; *Delgado* v. *Monroig*, 57 D.P.R. 474; Sentencias del 12 de diciembre de 1899 y 12 de noviembre de 1907, Tribunal Supremo de España.

[5] Sentencia del 17 de junio de 1920, Tribunal Supremo de España.

tenciador que, en el supuesto de que la prohibición del art. 1348 alcanzara al contrato de hipoteca impugnado, la misma no podía considerarse nula por haber sido consentida por todos los socios, aunque se hubiera otorgado en favor de uno de ellos directamente. Aceptan los apelantes que esa conclusión es correcta, pero sostienen que el verdadero fundamento que han invocado contra la validez del contrato es el supuesto de hecho a que se refiere el art. 1347, o sea que se trata en este caso de una escritura en la que Etelvina Zayas Hernández comparece "para gravar mediante hipoteca los bienes pertenecientes *a ella* dentro de dicha sociedad, a favor de su marido don Lucas Yon Rodríguez."

Esta contención carece de fundamento válido. El citado art. 1347 dispone que el marido y la mujer no podrán *venderse* bienes recíprocamente. En ninguna parte de la demanda se alega que Etelvina Zayas Hernández *vendiera* bienes a su marido Lucas Yon Rodríguez. Los bienes que ella, en unión a su señora madre y sus dos hermanos, hipotecó a su esposo pertenecían a la entidad jurídica denominada Sociedad Agrícola Zayas. No está envuelta aquí una sociedad universal de ganancias en la que todos los bienes muebles o inmuebles que cada socio posee al tiempo de la celebración del contrato continúan siendo de dominio particular, pasando sólo a la sociedad el usufructo. Art. 1566, Código Civil.

■ Al constituirse la Sociedad Agrícola Zayas pasó a ser propiedad social el condominio privativo de una octava parte que en cada una de las once fincas rústicas tenía Etelvina Zayas Hernández, adquiriendo simultáneamente esta socia un derecho de crédito—bien mueble—correspondiente a su verdadera aportación y a sus derechos en las ganancias o responsabilidades de la sociedad.

Respecto a extraños—como aquí lo es Orraca Martínez— o sea, observando las relaciones sociales por su lado externo o en su actividad finalista, la separación entre el patrimonio social y el individual o propio de cada socio, se considera

absoluta, ya que la aportación social constituye la única garantía de los acreedores de la entidad.(⁶)

■ La sociedad representada por todos sus socios, —y entre ellos la esposa de Lucas Yon Rodríguez, que aportó únicamente un pequeño condominio al fondo social—fue la que, garantizando una deuda cuya legitimidad o existencia no se cuestiona, resultó deudora hipotecante. Cf. *Oxios* v. *Registrador*, supra, a la pág. 450. En la demanda se alegó que en la escritura social fue designado administrador el socio Generoso Zayas Hernández, pero que para el caso "de gravar, hipotecar o enajenar bienes inmuebles fueron designados mandatarios de la sociedad para esas transacciones, además de don Generoso Zayas Hernández, los demás socios doña Encarnación Hernández viuda de Zayas, don Alfonso, y doña Etelvina, esta última casada con don Lucas Yon Rodríguez."

No pudiendo funcionar los socios administradores, sin el consentimiento mutuo de unos y otros, se necesitaba el concurso de todos para la validez del otorgamiento de la garantía hipotecaria, sin que pudiera prescindirse de la concurrencia de Etelvina Zayas Hernández, en su condición de coadministradora, aunque la garantía se otorgara en favor de la sociedad legal de gananciales habida entre ésta y el acreedor hipotecario y se entendiera esta circunstancia como una imposibilidad para su otorgamiento. En estos casos de solidaridad administrativa es obligatoria e indispensable la concurrencia de todos los administradores, sin que pueda alegarse la ausencia o imposibilidad de alguno de ellos, salvo si hubiere peligro inminente de un daño grave o irreparable para la sociedad.(⁷)

---

(⁶) Véase la monografía titulada "Naturaleza Jurídica de la Aportación Social", de Roca Sastre. Rev. Gen. de Legislación y Jurisprudencia, tomo 179, pág. 143, del mes de abril de 1946.

(⁷) El art. 1585 del Código Civil dispone:

"En el caso de haberse estipulado que los socios administradores no hayan de funcionar los unos sin el consentimiento de los otros, se necesita el concurso de todos para la validez de los actos, sin que pueda ale-

No encontramos analogía alguna entre los hechos del presente caso y los del caso de *Delgado* v. *Monroig*, 57 D.P.R. 474, citado por los apelantes, en el que se decide que un contrato privado otorgado entre marido y mujer conviniendo la forma en que se dividirían los bienes gananciales una vez se dictara sentencia en un caso de divorcio que se tramitaba entre ellos, carecía de obligatoriedad por ser contrario a lo dispuesto en el art. 1347.

 Consideramos que existen otros motivos para la desestimación de la demanda. A los comandatarios Encarnación Hernández Ramos, Generoso y Alfonso Zayas Hernández, dueños de la mayor parte del interés social, ninguna incapacidad se les atribuye para otorgar la garantía hipotecaria. Por otro lado, y asumiendo que la prohibición del art. 1348 se extendiera al contrato de hipoteca, la nulidad relativa de la hipoteca de referencia quedó saneada por la confirmación implícita que de la misma realizó la coapelante Etelvina Zayas Hernández cuando en agosto de 1930 ella y su esposo Lucas Yon Rodríguez cedieron el crédito hipotecario a Agapito Vázquez. [8]

---

garse la ausencia o imposibilidad de algunos de ellos, salvo si hubiere peligro inminente de un daño grave o irreparable para la sociedad."

En *Oxios* v. *Registrador*, 39 D.P.R. 447, 453, se resolvió:

"El espíritu del artículo 1597, inciso 1, es dar vida a la sociedad y hacer que ella sea responsable al mundo en general de cualquiera de los actos de sus socios gestores. Nada hay en dicho artículo que impida que un socio adquiera bienes pertenecientes a la sociedad, con el consentimiento de los demás socios. Si se examina el artículo 1362 se notará que su espíritu es impedir fraudes y en determinado caso proteger a los mandantes o al público de actos torticeros de sus agentes. Nunca fue la intención de la Legislatura impedir que una razón social, cuando todos los socios dan su consentimiento, haga lo que crea más conveniente para sus propios intereses en cualquier forma, según provee el artículo 1360, supra. No hay indicación alguna de fraude y los registros públicos no deben cerrarse debido a tal posibilidad."

[8] Dice el profesor Federico de Castro en su artículo "El Autocontrato en el Derecho Privado Español", publicado en el Tomo 151 de la Revista de Legislación y Jurisprudencia, páginas 393-394, al referirse al art. 1459 del Código Civil de España, igual al 1348 nuestro, entre otras cosas, lo siguiente:

"*a*) Caso de autorización expresa del mandante. Parece será, a pesar de ella, nula la compra por las siguientes razones: el capítulo II

Si a los fines de esa cesión Etelvina Zayas Hernández consideró válido el contrato de hipoteca y recibió y disfrutó de sus beneficios, ella no puede ir válidamente contra sus propios actos. Véase *Sucn. González v. Federal Land Bank*, 51 D.P.R. 469, 473. Sería injusto que aplicáramos la sanción extrema de la nulidad, en perjuicio de un tercero perfectamente protegido, al cabo de casi 23 años de haberse constituído el crédito hipotecario que fue objeto de la ejecución sumaria.

(2) Como segundo y último error(⁹) sostienen los apelantes que el tribunal a quo erró al resolver que la acción estaba prescrita. Tampoco tienen razón. Resolvió acertadamente dicho tribunal al estimar la acción prescrita.

Los apelantes argumentan que la prescripción de los cuatro años no era aplicable porque el contrato de hipoteca no era uno meramente anulable sino "totalmente inexistente, por la incapacidad de las partes para otorgar el mismo . . ."

Aceptando hipotéticamente que el art. 1348 prohibe al mandatario constituir a su favor una garantía hipotecaria sobre los bienes de su mandante que estuviesen a su cargo y sujetos a su facultad para gravarlos y que, efectivamente, el mandatario contraviene esa disposición legal gravando con

---

lleva la rúbrica 'de la capacidad para comprar o vender', serán, por tanto, las personas señaladas en el art. 1.459, incapaces para comprar; es una disposición especial al contrato de compraventa derogadora de toda otra general; es una disposición de carácter imperativo, no derogable por voluntad de los contratantes.

"b) Caso de ratificación. Aun siendo nula producirá la compra todos sus efectos si se confirma, expresa o tácitamente, pues tiene todas las condiciones exigidas por el art. 1.261 (art. 1.310 y 1.311). Concuerda y se confirma con lo dispuesto por el art. 1.259, que acepta como válido un contrato nulo, con sólo ser ratificado, convalidándose según la jurisprudencia, desde el momento de su celebración. (Sentencia de 7 de mayo de 1897. Resolución de 25 de julio de 1905.)"

(⁹)El primer motivo para solicitar la declaración de inexistencia del procedimiento ejecutivo sumario, como ya expusimos, consistió en no alegarse en el escrito inicial que el acreedor ejecutante "se personara en el domicilio de la sociedad deudora a recibir o cobrar el supuesto crédito hipotecario a su vencimiento." El tribunal sentenciador decidió este punto adversamente a los demandantes, pero éstos no se quejan en apelación del fallo en cuanto a ese extremo.

hipoteca a su favor esos bienes, ¿sería ese acto inexistente o radicalmente nulo, o padecería de una nulidad relativa? Á nuestro juicio estaríamos frente a un acto relativamente nulo o anulable.

Castán, en su obra "Derecho Civil Español, Común y Foral", tomo Tercero, ed. octava, 1954, a la pág. 440, dice:

"III. *Anulabilidad o nulidad relativa.*—1. *Su concepto.*—A diferencia de la nulidad radical, que es aquella imperfección del contrato que impide a éste, *ipso iure*, producir sus efectos propios, la anulabilidad es aquella otra imperfección menos enérgica—derivada, sobre todo, de determinados vicios de capacidad o de voluntad—que da lugar a una acción de nulidad o de impugnación, la cual, si es ejercitada con éxito, produce la destrucción del acto con fuerza retroactiva.

"Esta especie de nulidad es la regulada en el cap. VI, tít. II, lib. IV, del Código Civil, que lleva por epígrafe 'De la nulidad de los contratos', y cuyo primer artículo, el 1.300, dice así: 'Los contratos en que concurran los requisitos que expresa el art. 1.261 pueden ser *anulados* aunque no haya lesión para los contratantes, siempre que adolezcan de alguno de los vicios que los invalidan con arreglo a la ley.' "

La anulabilidad de los contratos se establece exclusivamente como una medida de protección de la parte contratante que ha sido víctima de su inexperiencia, o del error, violencia o manejos dolosos. La facultad de anular un contrato es un derecho potestativo, cuyo fin es dejar sin efecto una relación obligatoria. Tal derecho sólo puede ser ejercitado entablando en tiempo oportuno, la acción de nulidad cuya duración es de cuatro años. Art. 1253, Código Civil. En tanto no sea judicialmente declarado nulo el contrato anulable surte los efectos propios de un acto válido.

Es obvio que el contrato de hipoteca envuelto en este pleito reúne todos los requisitos esenciales del consentimiento, objeto y causa previstos en el art. 1213. De estar comprendido dentro de la órbita de aplicación del art. 1348, adolecería de una irregularidad jurídica generadora tan sólo de la acción de nulidad relativa, capaz de sanearse por la rati-

352

ficación y por la prescripción. Véase *Oxios* v. *Registrador*, supra, a las págs. 450–453.

El contrato de hipoteca impugnado fue otorgado el 3 de septiembre de 1929. Se inscribió en el Registro de la Propiedad. Su cesión a Agapito Vázquez ocurrió durante el mes de agosto de 1930; su traspaso al codemandado Orraca Martínez se realizó por escritura de fecha 14 de diciembre de 1930. Ambas cesiones también fueron inscritas. La acción de nulidad fué entablada el 28 de abril de 1952, cuando ya habían transcurrido más de veintidós años de la constitución del crédito hipotecario.

En repetidas ocasiones este Tribunal ha expresado criterio sobre el problema legal aquí discutido, aunque en ninguno de los casos que hemos estudiado estaba envuelta la validez de un contrato de hipoteca. Varias veces hemos resuelto que contratos ejecutados contraviniendo la prohibición establecida por el art. 1348, incisos 1, 2 y 3, no son inexistentes o radicalmente nulos, sino anulables y que la acción para pedir su nulidad prescribe a los cuatro años.[10] Hemos decidido también que cuando el acto o contrato, además de contravenir la prohibición de ese artículo, es contrario a la moral o al orden público, el mismo no debe ser reconocido como legítima fuente de derechos, pues la idea de la ley es consagrar las transacciones legítimas y asegurar el debido cumplimiento de los contratos, pero en manera alguna ayudar a aquellos que en la consecución de sus propósitos asumen actitudes contrarias a sus propios compromisos previamente contraídos.[11]

Debemos concurrir con el juez sentenciador, que la demanda no aduce hechos suficientes para determinar una causa de acción y que, *en el supuesto caso* de haberla aducido, *la causa de acción estaba prescrita a la fecha en que se entabló la demanda, debiéndose confirmar la sentencia apelada.*

[10] *Ledesma* v. *Agraít*, 19 D.P.R. 566, 576; *Álvarez* v. *Riera*, 20 D.P.R. 324, 326; *Silva Hno. y Cía.* v. *Registrador*, 28 D.P.R. 177, 181.
[11] *Swiggett* v. *Colmore*, 30 D.P.R. 165, 175.