### CELIS ALQUIER *v.* MÉNDEZ.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 686.—Resuelto en marzo 7, 1912.

INTERPRETACIÓN DE LEY—DIVORCIO—MUERTE DE UNO DE LOS CÓNYUGES DESPUÉS DE ENTABLADA LA ACCIÓN—CONTINUACIÓN DE LA ACCIÓN POR EL ALBACEA.— De ·acuerdo con la ley vigente sobre la materia, la muerte de uno de los cónyuges después de entablada la acción de divorcio termina dicha acción, sin que pueda el albacea del cónyuge difunto continuar la acción con el solo fin de determinar los derechos sucesorios del cónyuge superviviente y la cuota usufructuaria que pueda corresponderle en los bienes del difunto.

ID.—Los tribunales al interpretar leyes dudosas deben tener presente la historia de la época en que se promulgaron.

ID.—DIVORCIO—MUERTE DE UNO DE LOS CÓNYUGES.—La historia de la ley de marzo 9, 1905, relativa a herederos forzosos es examinada en la opinión. Como tal ley fué principalmente promulgada para reimplantar las disposiciones que existían anteriormente relativas a hijos naturales y se ha establecido en Puerto Rico un sistema completamente nuevo de divorcio, las disposiciones de la sección 8 de dicha ley preceptivas de la continuación de la acción de divorcio después de la muerte de uno de los esposos, deben ser interpretadas en el sentido de haber sido copiadas de la antigua legislación inadvertidamente.

ID.—EFICACIA DE TODOS LOS PRECEPTOS DE UNA LEY—RESULTADOS ABSURDOS.— Aunque es verdad que existe el precepto legal de que debe darse efecto a todos los preceptos de una ley, también los tribunales han ·declarado que este precepto debe observarse en tanto en cuanto tal interpretación no lleve a resultados absurdos.

ID.—COSAS INÚTILES.—No debe interpretarse una ley en un sentido tal que equivalga a que se hagan cosas inútiles y vanas con autorización de dicha ley.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Jorge V. Domínguez.*

Abogado del apelado: *Sr. Eduardo Acuña.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Doña Carlota de Celis Alquier en vida entabló una acción de divorcio contra Don Ramón Méndez Cardona por trato cruel e injurias graves; pero la demandante falleció al parecer antes de ser contestada la demanda. Su albacea Luis de Celis Alquier compareció pidiendo que el pleito continuara en su nombre para beneficio de los herederos de aquélla y con el único propósito de determinar la participación que Don Ramón Méndez Cardona pudiera tener en su herencia y si tenía derecho a la cuota usufructuaria. El demandado compareció y se opuso a la petición del albacea, y la corte denegó dicha petición mediante una opinión bien razonada.

Al alegar el demandado en su oposición a dicha petición que teniendo el pleito por fin único la disolución del vínculo matrimonial y siendo la acción de carácter personal, con el fallecimiento de la demandante quedó disuelto el matrimonio; tal argumentación nos parece tan evidente que no requiere demostración; sin embargo, por razón de la ley y del procedimiento de divorcio que existía en España en relación con la sucesión testada y por ciertas palabras anómalas contenidas en una de nuestras leyes, se hace necesario entrar en una amplia argumentación.

El tribunal inferior nos dice que este es un caso sin precedente alguno; que en España no podía haber ninguno porque el procedimiento actual de divorcio es radicalmente distinto del anterior; que en tiempo de España el objeto del divorcio era suspender la vida común de los esposos sin disolver el matrimonio, mientras que hoy queda disuelto el vínculo matrimonial; que los efectos del divorcio eran, primero, la pérdida por el cónyuge culpable de todo lo que había recibido del otro sin derecho a reclamar nada; en segundo lugar, la pérdida de la administración de los bienes de la esposa en los casos en que el esposo fuera el cónyuge culpable; que en el estado actual de nuestra legislación, el divorcio

es absoluto y la acción que la ley autoriza tiene por único fin el decretar la disolución del vínculo matrimonial, cuyo objeto queda conseguido completamente por la muerte de cualquiera de los esposos y así lo reconoce el artículo 163 del Código Civil al enumerar la muerte, el divorcio y la nulidad del matrimonio como causas determinantes de la disolución; que la acción de divorcio no es de aquellas que sobreviven y pasan a los herederos del difunto; que la cuestión de la propiedad de los cónyuges es de carácter accesorio y no puede tener una importancia o un efecto mayor que la disolución por la muerte, siendo ésta la causa principal, según la misma ley; que es lógico que la muerte como causa de disolución no puede coexistir con el divorcio; y que el sostener lo contrario equivaldría a mantener por medios artificiales un estado o condición que se ha realizado ya naturalmente. Estas son partes de los argumentos aducidos por el tribunal inferior para llegar a la conclusión de que la ley de la Legislatura de marzo 9, 1905, no tuvo la intención de que una acción cuyo fin único había sido realizado por la muerte, pudiera ser continuada por el albacea de la testadora.

El artículo de la ley de marzo 9, 1905, que originó esta confusión, es el siguiente:

"Sección 8.—El viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda a cada uno de sus hijos o descendientes legítimos no mejorados.

"Si no quedara más que un sólo hijo o descendiente, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora, conservando aquél la nuda propiedad hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio.

"*Si estuvieren los cónyuges separados por demanda de divorcio, se esperará al resultado del pleito*"

Se alega que el último párrafo de este artículo da al albacea el derecho de continuar la acción de divorcio con el

fin de determinar los derechos de los herederos de la esposa contra el marido.

El divorcio en su forma nueva fué promulgado en esta isla por el Gobierno Militar y reconocido por el artículo 8 de la Ley Foraker. Las disposiciones fundamentales de la ley de divorcio fueron incorporadas en el Código Civil de 1902, artículos 163 al 179, de modo que en 1905, cuando fué aprobada la ley de marzo 9, ya había sido suplantado el antiguo sistema de divorcio por el moderno. Pero el Código Civil de Puerto Rico de 1902 también modificó el antiguo Código Civil español en otros extremos y sobre todo, en lo que se refiere a las sucesiones tal como aparecen en los artículos 795, 796, 797, 801, 811, 812, 815, 821, 822, 823 y 824 del Código Civil de Puerto Rico. La ley de marzo 9, 1905, derogó todas estas disposiciones y constituyó de nuevo en leyes todas las disposiciones relativas a la sucesión testada que habían regido antes de promulgado el Código Civil de Puerto Rico. Los artículos 163 al 179 relativos al divorcio permanecieron intactos. Los preceptos terminantes de la ley de marzo 9, 1905, son en realidad una implantación nueva, palabra por palabra, de. los respectivos artículos del Código Civil Español, Nos. 806, 807, 808, 809, 813, 823, 824, 825, 828, 834, 835, 836, 837, 838, 839, 840, 841, 842, 843, y 844. El artículo 834 del Código Civil Español, equivalente el artículo 8 de la ley que se discute, contiene además las siguientes palabras: "Si entre los cónyuges divorciados hubiere mediado perdón o reconciliación, .el superviviente conservará sus derechos." Este párrafo adicional fué omitido por nuestra Legislatura, probablemente por haberse insertado una disposición semejante en el artículo 172 del Código Civil de Puerto Rico. La intención del legislador giraba como se ve alrededor de la sucesión testada y no estaba fija especialmente en la cuestión de divorcio.

Si examinamos los artículos expresamente derogados por la ley de marzo 9, 1905, observaremos que muchos de ellos encierran preceptos relativos a los hijos ilegítimos reconocidos, quienes por la ley posterior han sido excluídos de entre los

herederos forzosos.   El artículo 821 del Código Civil de Puerto Rico, que, por ejemplo, se refiere a los derechos del cónyuge supérstite y del cual el citado artículo 8 es evidentemente una sustitución, también trataba del "hijo legítimo o hijo ilegítimo reconocido," de modo que se demuestra de la misma ley que uno de los fines de la ley de marzo 9, 1905, era colocar a los hijos ilegítimos en una clase distinta de los hijos legítimos. Por cierto que es un hecho conocido en nuestra historia local que la eliminación de los hijos ilegítimos de la clase de herederos forzosos fué objeto de discusión por muchos años y fué el objeto principal de la ley de marzo 9, 1905.   Los tribunales al interpretar leyes dudosas, deben tener presente la historia de la época en que se promulgaron.

*Aldridge et al.* v. *Williams,* 3 How (U. S.), 24.

*U. S.* v. *Union Pacific R. Co.,* 91 U. S., 79.

*U. S.* v. *Trans-Missouri Freight Assoc.,* 166 U. S., 319.

La ley de marzo 9, 1905, como ya hemos visto, suprimió los preceptos relativos a los hijos ilegítimos en general y además implantó de nuevo la distinción que había existido antes con respecto a los hijos naturales.   Y al hacerlo así, nosotros creemos que por inadvertencia incluyeron en la sección 8 las palabras "si estuvieren los cónyuges separados por demanda de divorcio, se esperará al resultado del pleito."   Estas palabras coexistían con la ley de divorcio tal como fué promulgada por las órdenes militares antes de 1902, y nosotros creemos que nadie hubiera sostenido en 1901 que las órdenes militares y la Ley Foraker no habían borrado por completo la posibilidad de que se continuara una acción de divorcio después de la muerte de uno de los cónyuges, o en otras palabras, en 1901 regía el Código Civil español al mismo tiempo que la ley reformada de divorcio, según fué establecida por leyes americanas.   La Legislatura al promulgar de nuevo los preceptos del antiguo Código Civil no tuvo la intención de modificar la ley en lo tocante al divorcio tal como había existido antes de que empezara a regir el Código Civil de Puerto Rico. En otras palabras, el *statu quo* existente antes de 1902 fué

restaurado, pero la legislación aplicable al nuevo sistema de divorcio había ya hecho imposible que una acción de divorcio pudiera ser continuada por el albacea de uno de los cónyuges.

Aun suponiendo que la Legislatura tuvo la intención de conceder a un albacea el derecho de continuar una acción de divorcio, no dispuso los medios necesarios para llevar a cabo tal propósito. Fué un *casus omissus* en la Legislación.

El objeto y fin únicos de una acción de divorcio continuaron siendo, el obtener la sentencia de divorcio o sea el disolver el vínculo matrimonial.

Ya hemos visto que el artículo 8 sustituye al artículo 821 del Código Civil y que el artículo 821 necesitó un sustituto por razón de los preceptos que encerraba relativos a los hijos ilegítimos.

Aunque es verdad que existe el principio legal de que debe darse efecto a todos los preceptos de una ley, también los tribunales han declarado que este principio debe observarse en tanto en cuanto tal interpretación no lleve a resultados absurdos.

*Glover* v. *U. S.,* 164 U. S., 298.

*U. S.* v. *Fisher,* 2 Cranch (U. S.), 386.

*Bailey* v. *Commonwealth,* 74 Ky., 688.

*Pond* v. *Maddox,* 38 Cal., 572.

Los resultados absurdos que se seguirían serían el permitir que se continuara una acción de divorcio cuando ya se había conseguido su objeto. Mirándo la cuestión bajo otro punto de vista, si hubiera que esperar el resultado del pleito, un albacea tendría que esperar para siempre, porque no hay preceptos en la ley que establezcan los medios de continuar un pleito de divorcio ni decretarse el mismo habiendo fallecido una de las partes, por virtud de lo cual ha quedado disuelto el vínculo matrimonial. La ley no puede permitir que se hagan cosas inútiles y vanas.

Broom Maxims, 252.

25 Cyc., 220, y casos citados.

Además, el artículo 129 del Código Civil de 1902, dispone

de una manera clara y expresa que antes del fallecimiento de uno de los cónyuges, el matrimonio sólo puede ser disuelto en los casos fijados en la ley, los cuales, de acuerdo con el artículo 163, son el divorcio y la nulidad del matrimonio. En vista de preceptos tan terminantes de la ley en lo que se refiere al efecto del divorcio, la única forma en que podría decirse que la intención del legislador fué establecer una modificación o excepción, sería por medio de disposiciones también de carácter terminante, y las palabras de la ley de marzo 9, 1905, carecen de la claridad y precisión necesarias para establecer un cambio en esta institución tal como existía.

Además, bajo nuestra actual legislación de divorcio, la separación como condición legal de que nos habla la ley, ha dejado de existir, tal como existía bajo el artículo 68 del párrafo 1 del Código Civil español. Entonces, al iniciarse una acción de divorcio el tribunal decretaba la separación de los esposos, y esa separación, tal como se entendía en aquella época, no existe ya, pues de la misma naturaleza de las cosas resulta, que no puede subsistir una causa de acción después del fallecimiento de una persona en la que el único objeto es pedir que se decrete un divorcio.

*Kirschner* v. *Dietrich,* 110 Cal., 503:

*McCurley* v. *McCurley,* 45 Am. Rep., 717, 720.

*Kimball* v. *Kimball,* 82 Am. Dec., 194.

Debe confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Asociados MacLeary, del Toro y Aldrey.

Juez disidente: Sr. Presidente Hernández.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. HERNÁNDEZ.

Siento discrepar de la opinión de mis ilustrados compañeros por los motivos que paso a exponer.

En 17 de junio del año 1910 Carlota de Celis Alquier presentó demanda ante la Corte de Distrito de Humacao contra

su esposo Ramón Méndez Cardona, en que después de alegar trato cruel e injurias graves del demandado para con la demandante, la existencia de bienes gananciales por liquidar a la disolución de la sociedad conyugal y la carencia absoluta de prole en el matrimonio, concluyó con la súplica de que en su día se dictara sentencia declarando roto el lazo matrimonial que unía a ambas partes, con las costas al demandado, y demás procedimientos del caso.

En 7 de enero del año próximo pasado, pendiente de emplazamiento el demandado, formuló petición a la misma corte Luis de Celis Alquier, en su carácter de albacea testamentario de Carlota de Celis Alquier, la que había fallecido en 8 de agosto de 1910, solicitando que la acción de divorcio continuara por y a nombre del peticionario, como albacea testamentario de los bienes de la demandante, para beneficio de los herederos de ésta y a los solos efectos de determinar la cuantía o participación que en dichos bienes y a título de cuota en usufructo pudiera tener el demandado Ramón Méndez Cardona.

En 17 de enero citado se personó en el pleito Ramón Méndez Cardona a sostener los derechos que le asistieran, y cuatro días después se opuso por medio de escrito a la pretensión de Luis de Celis Alquier, o sea a la substitución de parte demandante y continuación del pleito de divorcio hasta su terminación, alegando que en la demanda de la finada Carlota de Celis Alquier sólo se pedía que se declarara roto el vínculo matrimonial, y habiendo fallecido la demandante había quedado disuelto el matrimonio y roto para siempre dicho vínculo.

Discutidas la moción del albacea Luis de Celis Alquier y su impugnación, y presentada también por aquél demanda enmendada para el caso de que dicha moción fuera declarada con lugar, recayó resolución en 13 de marzo, que desestimó la moción del promovente con las costas al peticionario, quien interpuso contra tal resolución recurso de apelación para ante esta Corte Suprema.

Examinemos el recurso á luz de los preceptos legales que puedan ser aplicables al caso.

El artículo 69 del Código de Enjuiciamiento Civil dice así:

"Una acción o procedimiento no termina por la muerte o incapacidad de una de las partes  *  *  *  siempre que la causa de uno u otra subsista o continúe. En caso de muerte  *  *  *  de una de las partes, la corte, previa moción al efecto, podrá permitir que continúe la acción o procedimiento por o contra el representante o sucesor del muerto  *  *  *."

El artículo 51 de la Ley de Procedimientos Legales Especiales, aprobada en marzo 9 de 1905 está concebido en los siguientes términos:

"Será deber de los administradores y mientras éstos se nombren de los albaceas, representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte  *  *  *  y el albacea o administrador quedará subrogado como parte en la acción."

En vista de los preceptos legales que dejamos transcritos, es incuestionable que el albacea Luis de Celis Alquier puede representar a Carlota de los mismos apellidos en todas aquellas acciones o procedimientos en que subsista o continúe la causa de unos u otros, y sólo nos toca examinar ahora si la causa de la acción de que se trata en el presente pleito, continúa o subsiste después de muerta Carlota de Celis Alquier. Para ello debemos acudir a nuestro derecho sustantivo local, atemperándonos a la doctrina consignada por el Tribunal Supremo de los Estados Unidos en el caso de *Patton* v. *Brady,* 184 U. S., 612.

El Congreso, dice aquel respetable tribunal, no ha pretendido determinar qué clase de acciones sobreviven o subsisten a la muerte de una de las partes. La sección 955 de los Estatutos Revisados prescribe que "cuando cualquiera de las partes, bien demandante o demandada, en una acción pendiente ante una corte de los Estados Unidos, muere antes de sentencia final, el albacea o administrador judicial de tal persona puede en caso que la acción sobreviva, continuar o defender tal acción hasta sentencia definitiva. Esto no define

las causas que subsisten. En ausencia o defecto de alguna ley especial, la cuestión en cada caso aislado debe resolverse por derecho común o por la Ley del Estado en el que se suscitó y entabló la acción.''

La acción de divorcio, atendido su carácter personalísimo no subsiste y continúa después de la muerte de cualquiera de los cónyuges, sino que se extingue, con arreglo a nuestro derecho sustantivo local.

El artículo 129 del Código Civil establece que el matrimonio sólo podrá disolverse antes de la muerte de cualquiera de los cónyuges, en los casos expresamente previstos en dicho Código, a saber: por la muerte del marido o de la mujer, por el divorcio legalmente obtenido y por declaratoria de nulidad del matrimonio, llevando consigo el divorcio la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges, según el artículo 173.

Como la acción de divorcio se dirige a obtener el rompimiento del vínculo matrimonial, por más que venga como consecuencia de ese rompimiento la separación de propiedad y bienes de todas clases entre los cónyuges, y como la rotura del vínculo conyugal se ha obtenido en el presente caso por la muerte de Carlota de Celis Alquier, de ahí que la demanda presentada no puede subsistir para perseguir un fin que ya se ha realizado.

Pero ¿podrá continuarse el pleito iniciado, no para obtener el divorcio sino a los fines que indicó en su moción el albacea Luis de Celis Alquier?

Las secciones 8ª., 10ª., y 11ª. de la Ley de 9 de marzo de 1905 para modificar ciertos artículos del Código Civil, fijan los derechos del viudo o viuda que al morir su consorte no se hallare divorciado o lo estuviere por culpa del cónyuge difunto prescribiendo la primera de dichas secciones, cuya prescripción es extensiva a las dos restantes, que ''*si estuvieren los cónyuges separados por demanda de divorcio,* se esperará el resultado del pleito.''

Ante precepto tan claro y terminante de la ley no cabe

interpretación alguna, y se hace forzoso darle cumplimiento siempre que se trate de fijar los derechos del cónyuge viudo, cuando al fallecimiento del otro estuvieren ambos separados por demanda de divorcio, en cuyo caso lo que procede es esperar el resultado del pleito, o sea que se declare por sentencia si existe o nó la causa alegada para el divorcio.

Según regla de hermenéutica legal, las palabras de una ley deben siempre entenderse de modo que produzcan algún resultado, *verba cum effectu sunt accipienda;* y por tanto, es de rechazarse toda interpretación que deje sin sentido alguna cláusula o palabra de la ley, pues no puede creerse que el legislador haya querido hablar sin decir ni mandar nada.

Tal precepto ha sido ratificado por la Corte Suprema de los Estados Unidos en el caso de *Washington Market Co.* v. *Hoffman,* 101 U. S., 115.

" 'No tenemos,' dice ese alto tribunal, 'el derecho de interpretar ninguna ley de una manera que impida que cualquier parte de su texto surta efecto. Es una regla cardinal en la interpretación de leyes, que, siempre que fuere posible, debe darse significación y efecto a cada palabra. En una época tan remota como aquella a que se refiere la segunda sección de Bacon's Abridgment, se ha dicho que una ley en su totalidad debe ser interpretada de tal modo que, si es posible evitarlo, ninguna cláusula, sentencia, frase o palabra sea superflua, nula o insignificante. Esta regla ha sido repetida innumerables veces. Otra regla igualmente reconocida es la de que cada parte de una ley debe ser interpretada en relación con todo el texto de la misma, procurando que todas sus partes estén en armonía, si esto fuere posible, y dando significación a cada una de las mismas.' "

Y en el caso presente existe la posibilidad de dar aplicación al principio legal que dejamos apuntado, pues ella no nos lleva a consecuencias o resultados absurdos. Sería un absurdo continuar un pleito de divorcio para declarar la disolución de un matrimonio que ya está disuelto por muerte de uno de los cónyuges; pero no hay absurdo alguno en que se continúe ese mismo pleito, para determinar si había o nó causa legal de divorcio y con el solo fin de fijar los derechos del cónyuge viudo.

Aun más, la desheredación del cónyuge viudo que autoriza el artículo 832 del Código Civil puede ser impugnada en el juicio que se inicie contra la representación del cónyuge muerto y en dicho juicio forzosamente tendrá que discutirse la existencia de la causa legal de divorcio invocada para la desheredación, al solo fin de anular ésta o dejarla subsistente. Siendo ello así ¿qué razón hay para que un pleito de divorcio que dejó iniciado el cónyuge difunto no pueda continuarse al solo fin de determinar si el cónyuge viudo tiene derecho o nó a la cuota vidual por existir causa legal de divorcio, según se pretende por el albacea de la finada Carlota de Celis Alquier?

Y no solamente la letra de la ley exige la continuación del pleito de divorcio ya iniciado para fijar los derechos del cónyuge viudo, sino que también lo demanda el espíritu que informa esa misma ley.

A este propósito dice el ilustrado comentarista Scaevola al comentar los artículos 834, 835, 836, 837, 838 y 839 del Código Civil, que son las secciones 8ª., 9ª., 10ª., 11ª., 12ª. y 13ª. de la ley aprobada en 9 de marzo de 1905.

"Goza tan importante y decisiva influencia la unión real de los cónyuges, la vida común de los mismos en el usufructo vidual, que el legislador decreta que si se hallare planteado el juicio de divorcio sin haber llegado al fallo, 'se esperará el resultado del pleito.'

"El legislador, al establecer el precepto, ha obedecido, sin duda, a este razonamiento: La demanda de divorcio determina la separación provisional de los cónyuges (art. 68). Estado de derecho interino no puede producir efectos jurídicos definitivos. Si la adquisición o pérdida del usufructo vidual depende de estar o no estar los cónyuges unidos legalmente al divolverse el matrimonio, es conforme a razón que, pendiente pleito acerca del divorcio, haya que esperar a su resultado para afirmar o negar el usufructo.

"El legislador deja en suspenso el derecho, paraliza su movimiento de traslación hacia el cónyuge supérstite hasta que recaiga fallo en el litigio, sin distinguir caso alguno   *   *   *.

"En el caso de muerte del cónyuge inocente y supervivencia del presunto culpable   *   *   *   hay que esperar el resultado del pleito, porque de la declaración o negativa del divorcio depende la adquisición o no adquisición del usufructo por el supérstite. Aquí sí, el

divorcio ejerce una influencia decisiva en la vida del usufructo y es forzoso atender el fallo del tribunal, en el que están interesados igualmente el supuesto cónyuge culpable y los herederos del inocente, porque la sentencia favorable a una de las partes, perjudica a la otra. Dependiendo el nacimiento del usufructo del fallo que pueda recaer en el pleito, es conforme a razón resignarse a conocer aquél.

"La afirmación de la facultad de continuar el pleito de divorcio los herederos del cónyuge premuerto, parece pugnar con el carácter personalísimo de la cuestión, ratificado por el precepto del artículo 106 del Código, según el cual, el divorcio solo puede ser pedido por el cónyuge inocente, mas no hay que olvidar que si se discute en este punto el divorcio, es principalmente con relación a un efecto civil del mismo. Y este particular supone derechos y obligaciones, transmisibles, por tanto, a los herederos del cónyuge fallecido."

El pleito de divorcio iniciado por el cónyuge inocente y cuyo resultado debe esperarse, según precepto imperativo de la ley, para fijar los derechos del cónyuge viudo, ha de continuarse por el albacea mediante la correspondiente autorización judicial y por los trámites que para los juicios ordinarios establece el Código de Enjuiciamiento Civil. El albacea Luis de Celis Alquier ha intentado el procedimiento adecuado a ese fin. La Legislatura no quiso establecer procedimiento especial por no estimarlo necesario. Bastaba que ordenara se esperara el resultado del pleito de divorcio para que éste pudiera continuarse por los trámites ordinarios al solo fin, repetimos, de fijar los derechos del cónyuge viudo.

No hay, pues, duda alguna de que el pleito de divorcio después de iniciado puede continuarse para decidir si existe o nó la causa de divorcio alegada; pero es condición indispensable que al ocurrir el fallecimiento del cónyuge demandante estén ambos separados por demanda de divorcio. ¿Qué separación es esa de que habla la ley?

El artículo 68 del Código Civil español prescribe que interpuestas y admitidas las demandas sobre nulidad de matrimonio y sobre divorcio, se adoptarán entre otras disposiciones la de *separar los cónyuges en todo caso,* y así en los pleitos de divorcio, la separación de los cónyuges, por orden judicial,

siempre tenía lugar. Pero ese artículo ha sido derogado por el Código Civil Revisado en el cual no encontramos otro precepto relacionado con la separación de los cónyuges en caso de divorcio que el consignado en el artículo 167, que dice:

"Si la mujer que litiga por el divorcio ha dejado, o declarado su intención de dejar, el domicilio del marido, la corte de distrito le señalará una casa en la cual estará obligada a vivir hasta la terminación del juicio."

¿Será esa separación la requerida para la continuación del pleito de divorcio? Creemos que no, por cuanto según sostiene la ilustrada representación de la parte apelada en su alegato escrito, el derecho que dicho artículo reconoce es un *derecho limitado exclusivamente en su ejercicio a la mujer y de carácter sustancialmente potestativo, hasta el punto de que si la mujer no quiere ejercitarlo, el marido durante la sustanciación del pleito de divorcio vendría obligado a soportar a la mujer en el domicilio conyugal.* Los derechos del marido y de la mujer en ese caso no serían iguales, pues los del marido estarían sujetos a la voluntad o capricho de la mujer.

No pudiendo acudir al Código Civil antiguo para fijar el concepto de la separación de los cónyuges por demanda de divorcio a los efectos de la cuota vidual, pues el artículo 68 que establece *en todo caso* la separación por orden judicial cuando había demanda de divorcio, ha sido derogado, ni tampoco al artículo 167 del Código Revisado por la razón ya expresada, ¿qué sentido debemos dar a aquel concepto, pues alguno debe tener, según la regla de interpretación de que dejamos hecho mérito?

Es una regla bien establecida de interpretación que las palabras simplemente usadas en las leyes deben tomarse en su significación propia, natural y genuina a menos que evidentemente resulte que el legislador les ha dado una significación impropia o excepcional.

Separación, según el Diccionario de la Lengua Española, es "la acción y efecto de separar o separarse" y separar signi-

fica "poner a una persona o cosa fuera del contacto o proximi-
dad de otra." Un cónyuge estará fuera del contacto o proxi-
midad del otro cuando no vivan ambos bajo un mismo techo, en
cuyo caso estarán separados. Y no es necesario que tal sepa-
ración se realice mediante orden judicial, pues la ley de 9 de
marzo de 1905 no exige tal requisito. Basta que exista la se-
paración por demanda de divorcio para que se continúe el
juicio hasta llegar a su resultado y, en su consecuencia, otor-
gar o nó al cónyuge viudo la cuota usufructuaria correspon-
diente.

El mismo Código revisado autoriza la doctrina que deja-
mos consignada, pues su artículo 832 anteriormente citado, al
fijar las justas causas para la desheredación de un cónyuge
por el otro, entre las cuales se encuentran las que dan lugar al
divorcio, concluye con el siguiente precepto:

*Para que las causas que dan lugar al divorcio lo sean tam-
bién de desheredación, es preciso que no vivan los cónyuges
bajo un mismo techo.*

En ese caso no ha exigido el legislador que exista una
orden judicial en virtud de la cual no vivan los cónyuges bajo
un mismo techo y solo requiere como condición necesaria para
la desheredación por alguna de las causas de divorcio, el hecho
de la separación, o sea que los cónyuges no vivan bajo el
mismo techo. No hay razón alguna que justifique la necesidad
de una separación acordada judicialmente para la continua-
ción de un pleito de divorcio, al solo fin de determinar los de-
rechos del cónyuge viudo.

Opinamos que la separación de los cónyuges para que
pueda continuarse el pleito de divorcio pendiente, es la misma
separación que el Código Civil exige para la desheredación
por causa legal de divorcio, o sea que no vivan los cónyuges
bajo un mismo techo. La razón de dicha condición es la misma
en uno y en otro caso, a saber, la presunción de reconciliación
si vivieran juntos.

Ahora bien, como en la demanda de fecha 17 de junio de
1910, se afirma que el demandado desde el 18 de mayo anterior,

faltaba del domicilio conyugal, y bajo esa demanda falleció la demandante en 8 de agosto del mismo año, es claro que al ocurrir dicho fallecimiento estaban ambos separados por demanda de divorcio, llenándose así el requisito de la separación que exige la ley para la continuación del pleito de divorcio de que se trata.

Por las razones expuestas procede se revoque la orden apelada de 13 de marzo de 1911, permitiéndose a Luis de Celis Alquier, como albacea de Carlota de Celis Alquier, la continuación del pleito de divorcio que ésta dejó iniciado a su fallecimiento contra su esposo Ramón Méndez Cardona, a los solos efectos pretendidos por dicho albacea.