EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Isabel Molina Texidor y otros<br><br>Demandantes<br><br>v.<br><br>Centro Recreativo Plaza Acuática<br><br>Demandado, Demandante Contra Coparte-Apelante<br><br>Universal Insurance Co.<br><br>Demandado, Demandado Contra Coparte-Apelado | Certiorari<br><br>2005 TSPR 172<br><br>166 DPR _____ |

Número del Caso: AC-2001-24

Fecha: 21 de noviembre de 2005

Tribunal de Apelaciones:

        Circuito Regional I de SJ-Panel III

Juez Ponente:

        Hon. Antonio J. Negroni Cintrón

Abogados de la Parte Apelante:

        Lcdo. Ricardo R. Pavía Cabanillas
        Lcdo. José E. Colón Rodríguez
        Lcdo. Gerardo M. Pavía Cabanillas

Abogados de la Parte Apelada:

        Lcdo. José A. Rodríguez Jiménez

Abogados de la Parte Demandante:

        Lcdo. José E. Hernández Rodríguez
        Lcda. Gloria Cardona Aldarondon
        Lcdo. Angel M. Rivera Munich
        Lcdo. Luis E. Rodríguez Santiago

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Isabel Molina Texidor
y otros

     Demandantes

        v.

Centro Recreativo Plaza Acuática       AC-2001-24

     Demandado, Demandante
     Contra Coparte-Apelante

Universal Insurance Co.

     Demandado, Demandado
     Contra Coparte-Apelado

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 21 de noviembre de 2005

Este caso nos brinda la oportunidad de expresarnos sobre el alcance y la validez de una cláusula de exclusión total de responsabilidad por contaminación ("total pollution exclusion clause") contenida en una póliza de seguros. Este tipo de cláusula es común en los seguros comerciales de responsabilidad pública ("comercial comprehensive general liability insurance") y la misma pretende excluir cobertura por daños causados como resultado de eventos de contaminación ambiental.

I

Los hechos que sirven de trasfondo a la controversia que está ante nuestra consideración son sencillos y no están en controversia.

El 17 de mayo de 1997, ocurrió un incidente en una de las piscinas del Centro Recreacional Plaza Acuática ("Plaza Acuática") que produjo la intoxicación a varias personas que utilizaban una de las piscinas del centro recreacional. Como resultado del incidente, se instaron doce (12) demandas en daños y perjuicios en distintas salas del Tribunal de Primera Instancia; casos que fueron consolidados.  Se alegó en las demandas que ese día ocurrió un escape de ácido clorhídrico e hipoclorito de sodio en el área de la piscina que produjo la intoxicación mencionada.[1]  Estas sustancias son dos productos químicos que se utilizan comúnmente para purificar el agua de las piscinas tanto comerciales como residenciales.  Las demandas se instaron contra Plaza Acuática y su aseguradora, Universal Insurance Company ("Universal").  Plaza Acuática instó demanda de coparte contra Universal.

Universal se negó a ofrecerle representación legal y cobertura a Plaza Acuática en diez (10) de los casos bajo el fundamento que la cláusula de exclusión total de responsabilidad por contaminación del seguro comercial excluía los daños provocados por contaminates tales como el ácido clorhídrico y el hipoclorito de sodio.[2]  La cláusula en controversia, en lo pertinente, lee como sigue:

The insurance does not apply to:

---

[1] Sobre este hecho no hay controversia.  Fue alegado en cada una de las demandas instadas y fue reconocido en las contestaciones a las mismas y en las mociones solicitando sentencia sumaria presentada por las demandadas.
[2] No surge del récord ante nuestra consideración, ni nos ha sido explicado el porqué se concedió representación legal en dos de las demandas y se negó en las otras.

'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
. . .

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid alkalis, chemicals and waste. Waste includes material to be recycled reconditioned or reclaimed.

Así las cosas, Plaza Acuática solicitó que se dictara sentencia sumaria parcial a su favor y se le ordenara a Universal a que le proveyese representación legal en todos los casos. Adujo en su moción que la cláusula en controversia era ambigua y como tal, debía interpretarse en contra del asegurador y a favor de reconocer cobertura. Indicó que la interpretación literal propuesta por Universal sobre la cláusula de exclusión llevaba a resultados absurdos lo que abonaba a su conclusión de que la misma era ambigua. Además, adujo que las sustancias que causaron el incidente no eran contaminantes y por su naturaleza común y uso generalizado no supuso que Universal los pudiera considerar como tales.

Universal por su parte se opuso a la solicitud de Plaza Acuática y a su vez presentó una moción de sentencia sumaria. En ésta indicó que la responsabilidad de una aseguradora de ofrecer cobertura al asegurado y defenderlo en la causa instada en su contra, se determina a base de las alegaciones de la demanda y cómo, lo alegado, enmarca dentro de los términos y condiciones de la póliza suscrita. A base de lo anterior, Universal arguyó que la cláusula de exclusión total

de responsabilidad incluida como endoso a póliza de Plaza Acuática no proveía cubierta para los daños alegados en la demanda. Ello así, toda vez que éstos fueron el resultado de un escape de ácido clorhídrico e hipoclorito de sodio, sustancias que "son contaminantes conforme a la cláusula, pues son irritantes cuando vienen al (sic) contacto con los seres humanos." Alegato de la Recurrida, págs. 14-15. En apoyo a su solicitud se anejaron a la moción de sentencia sumaria copia del endoso de exclusión de la póliza y de un informe de la Junta de Calidad Ambiental sobre el incidente acaecido.

El 9 de mayo de 2000, el Tribunal de Primera Instancia dictó sentencia. El foro primario determinó que la controversia sobre la cláusula de exclusión total era una de derecho por lo que era apropiado resolver la misma sumariamente. Así, el tribunal concluyó que la cláusula de exclusión de responsabilidad por contaminación era válida y no ambigua y que los químicos que produjeron los daños que se alegaron eran irritantes o contaminantes por lo que la compañía de seguros no tenía obligación de ofrecer representación legal ni cobertura por disposición expresa de la póliza. La demanda contra Universal fue entonces desestimada.

Inconforme, Plaza Acuática acudió ante el entonces Tribunal de Circuito de Apelaciones. El foro apelativo intermedio confirmó al foro primario bajo los mismos fundamentos que el Tribunal de Primera Instancia.

Nuevamente inconforme, Plaza Acuática acudió ante nosotros con un recurso de apelación. En su petición señaló como único error el siguiente:

> "Incidió el Tribunal apelativo al entender que la definición de "pollutant" contenida en la cláusula de exclusión de responsabilidad basada en contaminación es clara y libre de toda ambigüedad."

El 8 de junio de 2001 acogimos el recurso instado como una petición de certiorari y expedimos el mismo. Tanto Plaza Acuática como Universal presentaron sus respectivos alegatos por lo que estamos en posición de resolver y pasamos a así hacerlo.

## II

En sus alegatos ante nosotros las partes han esgrimido, sustancialmente, los mismos fundamentos que los discutidos ante los foros inferiores. Plaza Acuática además nos advierte que, contrario a lo aseverado por el tribunal apelativo, no existe uniformidad en los tribunales tanto federales como estatales de los Estados Unidos respecto el alcance de este tipo de cláusula de exclusión. Por el contrario, indicó que la jurisprudencia más reciente se inclina a avalar la posición por ella esgrimida. Enfatizó que estas cláusulas surgieron en respuesta a la legislación ambiental promulgada por el Congreso de los Estados Unidos por lo que cualquier interpretación sobre esta cláusula tiene que hacerse en función de su historial.

Por su parte, Universal recreó ante nosotros los argumentos esgrimidos ante los foros inferiores. En apoyo a

su posición nos indicó que la cláusula ha evolucionado a través de los años hasta convertirse en una de exclusión total de responsabilidad cuando se trata de sustancias o productos químicos que sean irritantes o contaminantes como los aquí involucrados, con independencia de que el evento se relacione o no con una situación de contaminación ambiental. Al igual que el Tribunal de Apelaciones aseveró que su posición era la que mayor apoyo goza en la jurisprudencia federal y estatal de los Estados Unidos.

Enmarcada la controversia en estos términos pasemos a analizar la misma.

A

El negocio de seguros es uno revestido de un alto interés público por lo cual ha sido regulado ampliamente por el Estado. Código de Seguros de Puerto Rico, Ley Núm 77 de 19 de junio de 1957, 26 L.P.R.A. secs. 101 et seq. *Comisionado de Seguros v. Anglo Porto Rican*, 97 D.P.R. 637, 640 (1969). Las pólizas de seguro que generalmente se mercadean en Puerto Rico son pólizas modelos semejantes o idénticas a las vendidas en los Estados Unidos. En virtud de ello, hemos reconocido que la jurisprudencia federal y estatal interpretativa de estas pólizas es de "obvia utilidad y gran valor persuasivo en nuestra jurisdicción." *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991).

El Código de Seguros establece la norma de hermenéutica aplicable a la interpretación de las pólizas de seguros al disponer que "todo contrato de seguro deberá interpretarse

globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta." Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125. *Díaz Ayala v. E.L.A.*, res. 30 de marzo de 2001, 153 D.P.R. ___, 2001 TSPR 40, 2001 JTS 49. En esta tarea, las normas generales del Código Civil sobre interpretación de contratos aplicarán solo de manera supletoria. *Banco de la Vivienda v. Underwriters*, 111 D.P.R. 1, 16 (1981). Arts. 1233 a 1241 del Código Civil, 31 L.P.R.A. secs. 3471 a 3479.

En *Banco de Vivienda, ante*, específicamente indicamos que por ser el contrato de seguros un contrato de adhesión, está sujeto "más que cualquier otro contrato bilateral, a la influencia y modificación que sobre el texto produce la intención y el propósito de las partes al vender el asegurador y comprar el asegurado la cubierta específica contra el riesgo particular que es causa del contrato." 111 D.P.R., pág. 6. En atención a lo cual hemos reconocido que los términos de las pólizas de seguro "deben ser generalmente entendidos en su mas corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces." *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 706 (1981). Así, el asegurado que adquiere una póliza tiene derecho a confiar en la cubierta que se le ofrece "leyendo las cláusulas del contrato a la luz del sentido popular de sus palabras." *Íbid*. Véase además,

*Barrera v. Tribunal*, 87 D.P.R. 227, 231-33 (1963); *Rosario v. Atl. Souathern Ins, Co. of P.R.*, 95 D.P.R. 765 (1968); *Pagán Caballero v. Silva Ortiz*, 122 D.P.R. 105, 110-11 (1988).

El propósito de todo contrato de seguros es la indemnización y protección en caso de producirse el suceso incierto previsto en el mismo. Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125. En vista de ello, hemos indicado que las cláusulas de exclusión de responsabilidad deben interpretarse restrictivamente y las dudas resueltas de modo que se cumpla con el propósito de la póliza. *PFZ Properties, Inc. v. General Acc. Ins. Co.*, 136 D.P.R. 881, 902 (1994). Ahora bien, "si una cláusula de exclusión aplica claramente a determinada situación", la aseguradora no está obligada a responder por los riesgos expresamente excluidos." *Marín v. Amerian Int'l Ins. Co. of P.R.*, 137 D.P.R. 356, 362-63 (1994). Después de todo, una póliza es en última instancia un contrato y como todo otro contrato constituye la ley entre las partes. Así, cuando los términos de la póliza son claros, específicos y libre de ambigüedades, las partes tienen que atenerse a lo allí dispuesto. *López Castro v. Atlantic Southern Ins. Co.*, res. 11 de febrero de 2003, ___ D.P.R. ___, 2003 TSPR ___, 2003 JTS 14; *Quiñónez López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc.*, 129 D.P.R. 521 (1991); *González Burgos v. Coop. De Seguros de Vida de Puerto Rico*, 117 D.P.R. 645 (1986). No se admitirá una interpretación que vulnere el claro propósito y voluntad de las partes.

*Domínguez Vargas v. GA of P.R.*, res. 12 de Julio de 2002, 157
D.P.R. ___, 2002 TSPR 104, 2002 JTS 110.

Con este trasfondo doctrinal en mente, pasemos a evaluar
el contrato de seguro ante nuestra consideración, no sin
antes hacer un recuento histórico de la cláusula impugnada
toda vez que ello nos permitirá auscultar su verdadero
propósito. Veamos.

B

En el pasado no habíamos tenido ocasión de expresarnos
sobre la cláusula de exclusión que hoy nos ocupa. En Estados
Unidos sin embargo, la misma ha sido objeto de amplia
litigación por lo que existe variada jurisprudencia tanto
federal como estatal sobre el alcance de la misma. La
extensa discusión doctrinal y jurisprudencial que ha generado
esta cláusula ha sido descrita como un cenagal ("quagmire")
de interpretaciones judiciales inconsistentes en torno al
ámbito y alcance de la exclusión. Marrs, Pollution Exclusion
Clauses: Validity and Applicability, 26 *Tort & Ins. L. J.*
662, 667 (1991); Catalano, *Construction and Application of*
*Absolute or Total Pollution Exclusion Clause in Liability*
*Insurance Policy*, 106 ALR5th 1 (2003).[3]   Véase, *Nationwide*
*Mutual Ins. Co. v. Richardson*, 270 F.3d 948, 950 (D.C. Cir.

---

[3] En igual sentido véase, Burke, Pollution Exclusion Clauses:
The Agony, The Ecstasy, and the Irony for Insurance
Companies, 17 *N. Ky. L. Rev.* 443 (1990); Ballard, Manus,
Clearing Muddy Waters: Anatomy of the Comprehensive General
Liability Pollution Exclusion, 75 *Cornell L. Rev.* 610 (1990).
Catalano, *What constitutes "pollutant", "contaminant",*
*"irritant", or "waste" within meaning of absolute or total*
*pollution exclusion liability insurance policy*, 98 ALR5th 193
(2002).

2001)("Courts around the country are divided in construing the scope of the pollution exclusion clause. Some courts read the clause expansively and thereby give broad reach to the exclusion, and others find the clause ambiguous and construe it narrowly in favor of insured parties seeking coverage.")

Las cláusulas de exclusión de responsabilidad por contaminación comenzaron a utilizarse con mayor frecuencia en las pólizas comerciales de responsabilidad pública ("general liability policy") en la década de los años setenta, en respuesta a una preocupación de la industria de seguros sobre el alto costo de las reclamaciones ambientales. Ello así, principalmente, en virtud de la aprobación por el Congreso de los Estados Unidos en el 1976 del Resources Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. secs. 6901 *et seq*; y, poco después en el 1980, del Comprehensive Enviromental Respose, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. secs. 9601 *et seq.* Véase, *Essex Ins. Co. v. Tri-Town Corp.*, 863 F.Supp. (D.Mass. 1994)("the insurance industry reacted with lighting speed to the possibility that . . . it could find itself indemnifying industries facing the staggering retroactive clean-up costs imposed by the 1980 enactment of the Comprehensive Environmental response Compensation and Liability Act . . . .")[4]

---

[4] El profesor Jerry nos señala correctamente lo siguiente respecto la relación entre la legislación ambiental promovida por el Congreso y la industria del seguro. Indica éste: "The insurance coverage issues in environmental liability situations cannot be understood without a basic grasp of the

A esos efectos se promovió un lenguaje en las pólizas que solo proveía cubierta cuando el daño ambiental por el que se reclamaba era uno de carácter "repentino y accidental" ("sudden and accidental"). Éstas cláusulas se denominaron de exclusión de responsabilidad condicionada. Como era de esperarse, las mismas generaron múltiples litigios sobre el significado de "repentino y accidental", con resultados inconsistentes y no satisfactorios para la industria. L. Russ, T. Segalla, *Couch On Insurance 3d*, West Publishing, Vol. 9, 2005, sec. 127:3; Murphy, The "Sudden and Accidental" Exception to the Pollution Exclusion Clause in Comprehensive General Liability Insurance Policies: The Gordian Knot of Enviromental Liability, 45 *Vand. L. Rev*. 161, 163-72 (1992).

En el año 1986, la industria del seguro a través de la organización conocida como Insurance Services Office que agrupa a numerosas compañías de seguro, promulgó y propulsó la adopción de un nuevo endoso de exclusión. Éste pretendía proveer un lenguaje de mayor claridad y por lo tanto certeza, que facilitara la interpretación de la cláusula. Ballard, Manus, *ante*, pág. 621, n. 41. De esta forma surgieron las llamadas cláusulas de exclusión total o absoluta de responsabilidad por contaminación ("total or absolute pollution exclusion clauses"). El lenguaje de exclusión utilizado en la póliza que nos ocupa es virtualmente idéntico al promovido en el 1986 por el Insurance Services Office.

---

regulatory environment for hazardous waste." R. Jerry, *Understanding Insurance Law*, Lexis Nexis, 3ra ed., 2002, sec. 65[5][i], pág. 557.

No empece lo anterior y como ya indicamos, la jurisprudencia federal y estatal estadounidense denota una gran falta de uniformidad sobre cómo interpretar estas cláusulas. Innumerables tribunales han determinado que el lenguaje que nos ocupa es claro y libre de ambigüedades por lo que no provee cubierta para situaciones similares a la alegada en este caso;[5] pero así también existe amplia jurisprudencia que sostiene todo lo contrario.[6] Como vemos

---

[5] Véase entre otros, *W. World Ins. Col v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir. 1990); *Hydro Systems, Inc. v. Continental Insurance Co.*, 929 F.2d 427 (9th Cir. 1991); *City of Spokane v. United Nat. Ins.*, 190 F.Supp.2d 1209, 1221 (E.D. Wash. 2002); *Toledo v. Van Waters & Rogers, Inc.*, 92 F.Supp.2d 44, 52 (D.R.I. 2000); *Longaberger Co. v. United States Fidelity & Guar. Co.*, 31 F.Supp.2d (S.D. 1998); *Pa. Nat. Mut. Cas. Ins. Co. v. Triangle Paving, Inc.* 943 F.Supp. 560, 567 (E.D.N.C. 1996); *Alcolac, Inc. v. Califoronia Union Ins. Co.* 716 F.Supp. 1546, 1549 (D. Cal. 1989); *Matcon Diamond, Inc. v. Penn Nat. Ins. Co.*, 815 A.2d 1109, 1115 (Pa. 2003); *Tartan Oil Corp. v. Clark*, 258 A.D.2d 457, 458 (N.Y. 1999); *Peace ex rel Lerner v. Northwerstern Nat'l Ins. Co.*, 596 N.W.2d 429 (Wis. 1999); *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777 (Minn. 1999); *Deni Assocs. of Fla., Inc. v. State Farm Fire & Co.*, 711 So.2d 1135 (Fla. 1998); *Bernhardt v. Hartforod Fire Ins. Co.*, 648 A.2d 1047 (Md. 1994). Los tratadistas Russ y Segalla sostienen igual criterio. Señalan: "The majority of courts have held that total pollution exclusion 'is clear and unambiguous'." L. Russ, T. Segalla, *Couch On Insurance 3d*, West Publishing, Vol. 9, 2005, sec. 127:3, pág. 127-43.

[6] Véase entre otros, *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 30 (1st Cir. 1999); *Auto Owners Ins. Co. v. Potter*, 105 Fed. Appx. 484, 2004 WL 1662454 (4th Cir. 2004); *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 36-37 (2nd Cir. 1995); *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1183 (6th Cir. 1999); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Cop.*, 976 F.2d 1037, 1043 (7th Cir. 1992); *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan. 1991); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 930 (N.J. 2005); *Allstate Ins. Co. v. Barron*, 848 A.2d 1165, 1181 n.19 (Conn. 2004); *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 18 (N.Y. 2003); *Andersen v. Highland House Co.*, 757 N.E.2d 329 (Ohio 2001); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind. 1996); *Kenyon v. Sec. Ins. Co. of*

entonces la posición de cada una de las partes en este caso encuentra apoyo en jurisprudencia norteamericana, ante la divergencia en opiniones y la ausencia de un claro consenso sobre cómo interpretar este tipo de disposición.

El argumento principal esgrimido en la doctrina para concluir que la cláusula de exclusión no es ambigua es su propio lenguaje, el cual de su faz expresa qué riesgo no está cobijado por la póliza. La cláusula de exclusión ante nuestra consideración, en lo pertinente, dispone que la póliza no será extensiva a daños físicos o a la propiedad, que no hubieran ocurrido en todo o en parte, como resultado alegada o potencialmente, de un derrame, escape o descarga, de contaminantes ("pollutants"). Los contaminantes a su vez, quedan definidos como sólidos, líquidos, gases, irritantes o contaminantes térmicos que incluyan humo, vapor, hollín, gases, ácidos, químicos y desperdicios. Este lenguaje por lo tanto: 1) identifica el tipo de material o agente que produce la contaminación, *i.e.*, humo, vapor, hollín, un irritante o contaminante; 2) describe la naturaleza o propiedad de ese agente contaminante, i.e., sólidos, líquidos, gases; 3) especifica la forma en que se disemina el contaminante, *i.e.*, derrames, escapes o descargas.

El lenguaje de la cláusula especifica el riesgo o siniestro no cobijado por la póliza. A base de lo anterior, se concluye que la exclusión es clara y de carácter absoluta.

*Hartford,* 626 N.Y.S.2d 347, 350 (N.Y.Sup.Ct. 1993), *aff´d,* 206 A.D.2d 980 (1994); *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 620 (Md. 1995); *Motoristrs Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681 (Ky. 1991).

Éste es precisamente el argumento que levanta Universal en este caso en apoyo a su posición, al indicar que aquí hubo un evento contaminante ya que hubo un escape de unos químicos —ácido clorhídrico e hipoclorito de sodio— que al advenir en contacto con seres humanos se convierten en irritantes. Nos urge que adoptemos su interpretación.

Por las razones que pasamos a discutir declinamos la invitación.

III

No hay duda que una lectura literal de los términos de la cláusula de exclusión de responsabilidad que nos ocupa parece apuntar, tal y como nos indica Universal, a que la misma es clara y específica en cuanto al riesgo no cubierto. Ahora bien, cualquier interpretación del contrato de seguros tiene que atenerse a la normativa previamente mencionada y aquella que postula que cuando un contrato de seguros es susceptible de dos interpretaciones se favorecerá la que sea en beneficio del asegurado. *Barreras v. Santana*, 87 D.P.R. 227, 231 (1963). Veamos.

De entrada llama la atención que un texto que se reputa libre de ambigüedades haya generado tan extensa litigación con resultados tan disímiles. No parece razonable entonces concluir sin más, y sólo atendiendo al rigor gramatical de la cláusula de exclusión, que la misma es clara y precisa. Después de todo, la ambigüedad puede surgir de la faz de la póliza o en la aplicación de la misma a una reclamación en particular. *Motorists Ins. Co. V. RSJ, Inc.*, 926 S.E.2d 679,

680 (Ky. 1996)("An ambiguity may either appear on the face of a policy or, in this case, when a provision is applied to a particular claim.")  El estado babélico de la normativa jurisprudencial en esta área es un factor a considerar al determinar si la cláusula en cuestión es o no ambigua. *Sullins v. Allstate Insurance Co.*, 667 A.2d 617, 624 (Md. 1995)("conflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity.")

Por otro lado, una interpretación literal de esta cláusula de exclusión llevaría, necesariamente, a unos resultados absurdos e indeseados.  Ya en el pasado hemos expresados que una interpretación de una ley o un contrato que lleve a resultados absurdos no puede sostenerse. *Irizarry López v. García*, res. 27 de noviembre de 2001, 155 D.P.R.___, 2001 TSPR 161, 2001 JTS 164; *Celis Alquier v. Méndez*, 18 D.P.R. 88 (1912); *Serra, Garabaris & Co. v. Municipio*, 42 D.P.R. 468 (1931); *Oxios v. Registrador de Ponce*, 39 D.P.R. 447 (1929).  Nos explicamos.

El fundamento principal de Universal es que toda vez que el escape o derrame en este caso fue de unos químicos que son "irritantes" y "contaminantes" al contacto con personas, la cláusula de exclusión de responsabilidad por contaminación se activa automáticamente y la aseguradora no tiene la obligación de ofrecer cubierta ni representación legal.  De avalarse esta interpretación la dimensión de la exclusión produciría resultados no solo insospechados, sino

irrazonables.    A modo de ejemplo, bajo la interpretación propuesta, el daño causado a una persona que resbala y cae al piso luego de derramarse el contenido de un envase del detergente clorox, no sería un riesgo cubierto por la póliza de seguro en virtud de la cláusula de exclusión de responsabilidad por contaminación.    Lo cierto es que aun cuando el clorox es un irritante o contaminante que bajo ciertas condiciones puede causar daños físicos y a la propiedad, de ordinario, este incidente no se cataloga o considera como uno de contaminación.    No hay duda que se requiere algo más.    Por ello es que entendemos acertadas las siguientes expresiones del Tribunal de Apelaciones de los Estados Unidos para el Sexto Circuito en *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (6th Cir. 1993):  "Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results."

Nos resulta preocupante avalar una interpretación tan amplia de la póliza que excluya de su cubierta casos que nada tienen que ver con eventos de contaminación ambiental, tal y como este concepto se entiende comúnmente.    Máxime, cuando sabemos que la cláusula en cuestión adviene al mundo de la industria del seguro precisamente en respuesta a la explosión en la litigación de desastres ambientales.    Su ámbito de aplicación por lo tanto debe limitarse a situaciones de esta naturaleza.    Nos parece que una persona razonable confrontada

con la cláusula de marras interpretaría la misma como aplicable solo a situaciones de contaminación ambiental.

La propia cláusula abona a esta interpretación. Así, vemos cómo el lenguaje que utiliza, --derrame, descarga, escape-- son términos típicos ("terms of art") provenientes del derecho ambiental, donde se utilizan para referirse a daños causados por actos de contaminación ambiental. *Nautilus Insurance Co. v. Jabar*, 188 F.3d 27, 30 (1st Cir. 1999) ("the terms used in the exclusion clause, such as 'discharge,' 'dispersal,' and 'escape,' are terms of art in environmental law and are generally used to refer to damage or injury resulting from environmental pollution.") En igual sentido, *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992); *West American Ins. Co. v. Tufco Flooring East, Inc.*, 409 S.E. 692, 699 (N.C. 1991).

Coincidimos por lo tanto, con aquellos tribunales que han limitado la aplicación de la cláusula de exclusión de responsabilidad por contaminación a aquellos riesgos tradicionalmente asociados con la contaminación ambiental. *Nautilus*, 188 F.3d, pág. 31; *Stoney Run Co. v. Prudencial-LMI Comercial Ins. Co.*, 47 F.3d 34, 38 (2d Cir. 1995); *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 498 (10th Cir. 1994)("It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as [environmental] pollutants and not as applying to every possible irritant or contaminant imaginable"); *American Ins.*

*Co. v. Koloms, ante*, pág. 82 ("We hold that the exclusion applies only to those injuries caused by traditional environmental pollution"); *West American v. Tufco*, 409 S.E.2d pág. 699, ("The historical purpose of the pollution exclusion limits the scope of the exclusion to environmental damage.")

En este caso los químicos involucrados en el incidente son productos utilizados comúnmente en la purificación de agua en las piscinas, incluyendo las piscinas residenciales. Son, por lo tanto utilizados a diario en el negocio que operaba Plaza Acuática. Ésta por lo tanto, no podía suponer que la póliza que adquiría de Universal iba a excluir de su cubierta situaciones de alegados daños resultantes de la utilización rutinaria de uno de los productos en la operación de su negocio que por algún motivo, en esta ocasión, malfuncionó. *Piperfitters Welfare Education Fund v. Westchester Fire Ins. Co.*, 976 F.2d. 1037, 1044 (7th. Cir. 1993) (la cláusula de exclusion no aplica cuando el daño es el resultado de "everyday activities gone slightly, but not surprisingly, awry."). De lo contrario, debemos plantearnos, ¿cuán útil era entonces la póliza que adquiría?

Conforme se alegó en la demanda instada en este caso, la intoxicación de los demandantes ocurrió cuando en la "piscina de marullos" comenzaron a salir "burbujas grandes en el agua . . . que explotaban y salían de ellas 'algo' que los dejaba sin respirar y los mareaba y que salía además un vapor de agua . . . ." Se alegó además que ello ocurrió como resultado de la presencia de ácido hidroclórico e hipoclorito

de sodio en la piscina producto de, entre otras cosas, el "mal funcionamiento del equipo" utilizado. Según la demanda, la fuga se circunscribió a la piscina de marullos del centro y su alrededor. Véase, Apéndice a petición *certiorari*, Demanda, alegaciones 9, 10 y 17, págs. 428-29.

Resolvemos que, toda vez que la cláusula de exclusión total de responsabilidad por contaminación es susceptible de dos posibles interpretaciones y que hemos resuelto que en esos casos se debe favorecer la interpretación que permita ofrecer cubierta al asegurador y, a tenor con el historial de la misma, procede determinar que las cláusulas de exclusión total de responsabilidad por contaminación aplican solamente a eventos de contaminación ambiental según este concepto se entiende comúnmente. Resolvemos además que en vista de que el evento por el cual se reclamó en este caso se circunscribió a la "piscina de marullos" y su área circundante, y que el agente involucrado en el incidente es uno utilizado rutinariamente en el negocio del recurrente, la cláusula de exclusión total de responsabilidad por contaminación no aplica a los hechos de este caso.

Surgiendo lo anterior de la faz de la demanda instada en este caso, Universal no podía negarse a brindarle representación legal a su asegurado. *Fernández v. Royal Indemnity Co.*, 87 D.P.R. 859, 863 (1963)("si [las] alegaciones [de la demanda] establecen hechos que colocan [o podrían colocar] el daño dentro de [la cobertura] de la póliza, el asegurador tiene que defender [a su cliente]

independientemente de la responsabilidad que en última instancia tenga el asegurado para con el demandante.") En igual sentido, *PFZ Properties, Inc. Ge. Acc. Ins. Co.*, 136 D.P.R. 881, 893-902 (1994).

Se revoca por lo tanto la determinación del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí resuelto.

Se dictara sentencia de conformidad.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Isabel Molina Texidor
y otros

    Demandantes

       v.

Centro Recreativo Plaza Acuática      AC-2001-24

    Demandado, Demandante
    Contra Coparte-Apelante

Universal Insurance Co.

    Demandado, Demandado
    Contra Coparte-Apelado


SENTENCIA


San Juan, Puerto Rico, a 21 de noviembre de 2005

Por los fundamentos antes expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca por lo tanto, la determinación del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Interina.


                      Dimarie Alicea Lozada
            Secretaria del Tribunal Supremo Interina